868 A.2d 431

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Tedor DAVIDO, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 2, 2003.

Decided Feb. 25, 2005.

56

58

Christopher P. Lyden, for Tedor Davido, appellant.

Heidi Fisher Eakin, Amy Zapp, Harrisburg, Susan E. Moyer, Lancaster, for the Com., appellee.

Before: CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and LAMB, JJ.

### *OPINION*

Chief Justice CAPPY.

This is a direct review of a sentence of death imposed by the Court of Common Pleas of Lancaster County.[1]  For the reasons that follow, we affirm the judgment of sentence.

On May 15, 2000, the Lancaster Bureau of Police charged Appellant, Tedor Davido, with the criminal homicide of his girlfriend, Angie Taylor.[2]  Following a jury trial, Appellant

---

1.  *See* 42 Pa.C.S. §§ 722(4), 9711(h)(1);  Pa.R.A.P. 702(b), 1941.

2.  Appellant was originally charged with aggravated assault on May 14, 2000.  Those charges were subsequently withdrawn, and the homicide charges were filed following the death of Angie Taylor.

was found guilty of first-degree murder[3] and rape[4]. During the penalty phase of the trial, Appellant chose to represent himself and put on no defense. Following the penalty phase, the jury found one aggravating circumstance, that the defendant committed a killing while in the perpetration of a felony[5], and no mitigating circumstances and fixed the penalty at death.[6] On January 3, 2002, the trial judge formally imposed the sentence of death for the murder of Angie Taylor and a consecutive sentence of 10 to 20 years of imprisonment for the rape conviction.

On January 7, 2002, the court appointed new counsel to represent Appellant on direct appeal. Counsel withdrew on March 19, 2002 without having filed a timely notice of appeal. The court appointed new counsel to represent Appellant. On April 29, 2002, the Court of Common Pleas of Lancaster County entered an order granting Appellant's Motion to Appeal Nunc Pro Tunc, and counsel filed an appeal on May 17, 2002. On May 31, 2002, Appellant filed a Statement of Matters Complained of on Appeal.

Subsequently, on January 15, 2003, the trial court filed an "Opinion Pursuant to Pa.R.A.P. 1925." Appellant then sought to supplement the record with a letter to the trial court dated October 15, 2001. The trial court granted the motion. Appellant appealed and filed a "Petition for Remission of the Record and Remand to the Lower Court" with this court, seeking to supplement the record further and to amend the 1925(b) statement to include a new issue. On June 6, 2003, the Petition was granted.[7] The trial court filed an "Opinion on Appellant's Amended Statement" on August 20, 2003, and this direct appeal followed.

Appellant raises five issues on appeal to this Court. Before reaching the issues raised by Appellant, we must first

3. 18 Pa.C.S. § 2502(a).
4. 18 Pa.C.S. § 3121.
5. 42 Pa.C.S. § 9711(d)(6).
6. 42 Pa.C.S. § 9711(c)(1)(iv).
7. Justice Eakin did not participate in that decision.

review the sufficiency of the evidence used to establish the first degree murder conviction. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982) (*citing* 42 Pa.C.S. § 9711(h)). In reviewing the sufficiency of the evidence, this court will consider whether the evidence and all reasonable inferences drawn from that evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, would permit a jury to find that all of the elements of the crime were present beyond a reasonable doubt. *Commonwealth v. Ockenhouse*, 562 Pa. 481, 756 A.2d 1130, 1135 (2000). Circumstantial evidence alone is sufficient to convict one of a crime, including first degree murder. *Commonwealth v. May*, 540 Pa. 237, 656 A.2d 1335, 1340 (1995). In order to sustain a finding of first-degree murder, the evidence must establish that a human being was unlawfully killed, that the appellant did the killing, and that the killing was done in an intentional, deliberate, and premeditated way. *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624, 626 (1991); *see* 18 Pa.C.S. §§ 2501(a), 2502(a).

With these considerations in mind, we now review the evidence presented at trial. At trial, the testimony presented established that Angie Taylor and her 2–year old son moved into 26 Hager Street in Lancaster to live with Appellant and his family. N.T., 12/5/2001, 49, 52; N.T., 12/6/2001, 48. During the early morning hours of May 14, 2001, Appellant and Angie Taylor were involved in a fight. N.T., 12/5/2001, 54, 60, 62; N.T., 12/6/2001, 298–300. That fight became physical. Appellant's sister placed a 9–1–1 call on the morning of the fight. In that call, Appellant's sister requested that the police come to 26 Hager Street where "a guy was beating up a girl." [8] N.T., 12/5/2001, 42, 52, 65. When the police arrived at 26 Hager Street, no one answered the door. N.T., 12/5/2001, 82–3, 105. Appellant testified that he got scared and exited the house via the roof when he heard the police. N.T., 12/11/2001, 747. He then went to Michele Gray's house. *Id.* Michele Gray testified that Appellant told her he was arguing

8. The caller identified herself as Martha, however, Rosanna Davido, Appellant's sister, later admitted to making the call.

with Angie, that he beat Angie up, and that Angie was breathing funny and not moving at the time he left the house. N.T., 12/6/2001, 365–67.

The police testified that they entered the house through a window and found Taylor on the third floor. N.T., 12/5/2001, 84, 109–11. Taylor was unconscious and almost nude when the police found her. *Id.* at 90–92; 110–11. Medics transported Taylor to Lancaster General Hospital. *Id.* at 142. The treating physician testified that he treated her for brain swelling, which ultimately squeezed her brain stem, shutting off her vital functions. N.T., 12/6/2001, 320. Angie Taylor died in the afternoon of May 14, 2001. *Id.* at 323.

Testimony offered at trial established that Appellant told others that he beat Taylor on the morning in question and then had sex with her when she wouldn't respond to him. N.T., 12/7/2001, 505–06; N.T., 12/10/2001, 565. Expert testimony established that the cause of death was repeated blows to the head, which caused Taylor's brain to swell and occluded the brain stem, eventually causing her death. N.T., 12/7/2001, 448, 450, 466.

These facts were sufficient to establish that Angie Taylor was unlawfully killed, that Appellant did the killing, and that the killing was done in an intentional, deliberate, and premeditated way. Accordingly, the evidence was sufficient for the jury to conclude that the Commonwealth proved all of the elements of first-degree murder beyond a reasonable doubt. *Ockenhouse supra.*

We now turn to the issues that Appellant raises in his brief to this court. Appellant first challenges the trial court's denial of his request to proceed *pro se* at trial. In support, Appellant points to a letter addressed to the trial court dated October 15, 2001, in which he alleges that he requested the appointment of new counsel or alternatively, requested to proceed *pro se* at trial. He argues that the trial court violated his Sixth Amendment right to self representation when it denied his

request to proceed *pro se* without a colloquy during the pretrial conference regarding this letter.[9]

■ The Commonwealth contends that Appellant never made a clear and unequivocal request to proceed *pro se* at trial, and thus, the trial court did not err in denying Appellant's request. Moreover, any error was corrected on the first day of trial before jury selection, when the court gave Appellant the right to reassert his desire to proceed *pro se*. Alternatively, the Commonwealth asserts that this issue should be analyzed as a claim of ineffective assistance of counsel due to counsel's failure to object to the trial court's failure to colloquy Appellant.[10]

■ Before turning to the merits of Appellant's claim, we will first address the Commonwealth's allegation that this claim should be raised as a claim of trial counsel's ineffectiveness. This claim is properly addressed as the error of the trial court, since Rule 121 of the Pennsylvania Rules of Criminal Procedure sets forth the procedure a judge must follow to determine whether the waiver of counsel was made knowingly, voluntarily and intelligently. Pa.R.Crim.P. 121; *see, e.g., Commonwealth v. Brazil,* 549 Pa. 321, 701 A.2d 216 (1997); *see also Starr,* 664 A.2d at 1335. In *Commonwealth v. McDonough,* 571 Pa. 232, 812 A.2d 504 (2002), this court considered whether the prosecutor could "colloquy" a defendant consistent with Rule 121. We acknowledged that a defendant had the right to represent himself at trial. *McDonough,* 812 A.2d at 506 (*citing Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). We then made clear that when a defendant desired to represent him-

9. Appellant does not raise a separate argument that this claim violated his right under Article 1, Section 9 of the Pennsylvania Constitution.

10. The Commonwealth also argues that this issue is waived since it was not raised in Appellant's 1925(b) statement, and relaxed waiver should not be invoked to review the issue. We presume that this argument was withdrawn by the Commonwealth by subsequent events when this court granted Appellant's "Petition for Remission of the Record and Remand to the Lower Court," which gave Appellant the right to amend his 1925(b) statement to include this claim and gave the trial court the first opportunity to address this claim.

self, "he must petition the court and the court must follow the appropriate legal procedure for securing a valid waiver of counsel." *Id.* Rule 121 provided the appropriate legal procedure and could be complied with by the prosecutor's colloquy so long as the prosecutor inquired into the six areas set forth by the Comments to Rule 121 before the trial judge.[11]  *McDonough*, 812 A.2d at 506–07.  In this way, the trial judge could ascertain on the record whether there was a knowing, voluntary, and intelligent waiver of counsel.  *Id.* at 508.  We stressed, however, that it was the trial judge who was "ultimately responsible for ensuring that the defendant is questioned about the six areas discussed above and for determining whether the defendant is indeed making an informed and independent decision to waive counsel." *Id.* Likewise, we held that it was the "trial judge" that had the duty to ensure that a defendant's right to counsel was protected.  *Id.* Thus, we conclude that, consistent with *McDonough*, the Rules of Criminal Procedure are clear that it is up to the trial court, and not

---

**11.**  The Comments to Rule 121 of the Pennsylvania Rules of Criminal Procedure set forth suggested areas of inquiry for waiver of the right to counsel.

It is recommended, however, that at a minimum, the judge or issuing authority ask questions to elicit the following information:
(1) That the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent.
(2) That the defendant understands the nature of the charges against the defendant and the elements of each of those charges.
(3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.
(4) That the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules.
(5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.
(6) That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.
Pa.R.Crim.P. 121 Comment.  These areas of inquiry are not absolute, since the linchpin of an evaluation of the waiver of counsel is whether the defendant "intelligently and understandingly" and voluntarily rejected the offer of counsel.  *Brazil*, 701 A.2d at 218.

counsel, to ensure that a colloquy is performed if the defendant has invoked his right to self representation. The Commonwealth's argument that this claim must be pled as one of ineffectiveness fails.[12]

█ Having resolved the Commonwealth's preliminary arguments, we must now consider whether Appellant invoked his right to proceed *pro se*, which required the trial court to colloquy him as discussed above. Federal case law generally requires that, in order to invoke the right of self representation, the request to proceed *pro se* must be made timely and not for purposes of delay and must be clear and unequivocal. *United States v. Callwood,* 66 F.3d 1110, 1113 (10th Cir.1995); *Adams v. Carroll,* 875 F.2d 1441, 1444 & n. 3 (9th Cir.1989); *see also Williams v. Bartlett,* 44 F.3d 95, 99 (2d Cir.1994); *United States v. Baker,* 84 F.3d 1263, 1264 (10th Cir.1996); *United States v. Hernandez,* 203 F.3d 614, 620 (9th Cir.2000). These requirements are consistent with the United States Supreme Court's application of the law in *Faretta,* since in concluding that the trial court could not force representation upon Faretta, the Court first noted that Faretta made his request before trial, and that the request was made "clearly and unequivocally." *Faretta,* 422 U.S. at 836, 95 S.Ct. 2525. Similarly, as we stated in *Commonwealth v. Grazier,* 552 Pa.

12. Mr. Justice Castille disagrees with our conclusion in this regard on the basis that neither Appellant nor his counsel "squarely invoked the right to self-representation" or requested the colloquy and concludes that this court should not impose a "sua sponte" duty on the trial court that is not contained in the Rules of Criminal Procedure. *See* Concurring opinion at 79–80, 868 A.2d at 447–48. As discussed infra, however, we conclude that Rule 121(C) imposes such a duty on the trial court, by making clear that "when a defendant seeks to waive the right to counsel, the trial court is required to conduct, on the record, a full and complete waiver colloquy to determine whether the defendant's waiver is knowing, voluntary, and intelligent." *Commonwealth v. Brazil,* 701 A.2d at 219.

Mr. Justice Castille also appears to be concerned that our decision today endorses hybrid representation. *See* Concurring opinion at 4 n. 1. While we respect Mr. Justice Castille's concern, we do not share it. Rather, at the time a defendant has affirmatively asserted his desire to proceed pro se, the defendant and his counsel are no longer working in concert. In fact, requiring counsel to take further action on a defendant's behalf after the defendant has requested to proceed pro se would undermine the Sixth Amendment right to self representation.

9, 713 A.2d 81, 82 (1998), for purposes of appellate proceedings, a court only needs to conduct an on the record colloquy when there has been a "timely and unequivocal" request to proceed *pro se.*

In reviewing the timeliness of the request to proceed *pro se,* courts generally consider the point in the proceedings that the request is being made. In *Commonwealth v. Owens,* 496 Pa. 16, 436 A.2d 129 (1981), we noted that "[w]here the accused does not request to represent himself before trial, the constitutional right to self-representation recognized in *Faretta* is not implicated. When, during the course of trial, an accused wishes to dismiss counsel and either represent himself or obtain new counsel, his request is addressed to the sound discretion of the trial court." *Owens,* 436 A.2d at 133 n. 6 (citations omitted); *see also United States v. McKenna,* 327 F.3d 830, 844 (9th Cir.2003); *Commonwealth v. Jermyn,* 551 Pa. 96, 709 A.2d 849, 863 (1998). Thus, whether the request was made before trial or during trial is a critical factor in determining the timeliness of the request.

Of equal importance is that the request to proceed *pro se* be unequivocal. While this court has not considered when a request to proceed *pro se* is deemed "unequivocal" a review of federal case law reveals that the courts generally consider a myriad of factors in concluding whether a request was unequivocal including: whether the request was for hybrid representation [13], *see, e.g. Callwood,* 66 F.3d at 1113, or merely for the appointment of standby or advisory counsel, *Baker,* 84 F.3d at 1267; the trial court's response to a request, *Hernandez,* 203 F.3d 614; whether a defendant has consistently vacillated in his request, *Brown v. Wainwright,* 665 F.2d 607 (5th Cir.1982); and whether a request is the result of an emotional outburst, *Jackson v. Ylst,* 921 F.2d 882 (9th Cir.1990); *see also Reese v. Nix,* 942 F.2d 1276 (8th Cir.1991) (finding that request that was merely an impulsive response to the trial court's denial of a request for new counsel was not

---

13. Hybrid representation arises when a defendant is represented by counsel and also wants to act as his or her own co-counsel. *Commonwealth v. Ellis,* 534 Pa. 176, 626 A.2d 1137 (1993).

unequivocal). The essence of these cases is that the inquiry surrounding whether a request to proceed *pro se* is unequivocal is fact intensive and should be based on the totality of the circumstances surrounding the request.

With these considerations in mind, we must review the circumstances surrounding Appellant's request for self representation to determine whether it was timely and unequivocal, such that he invoked his Sixth Amendment right to self representation. On October 15, 2001, Appellant wrote a letter to the trial court requesting new counsel. As part of that letter, Appellant included the following statement "in that if you do not apoint new councel than ill have no other alternative but to excircsise my 6th amendment to represent my self and have Mr. Spahn as my assistant." Letter of Appellant dated October 15, 2001. The trial court held a pretrial hearing regarding the letter on November 14, 2001. At the hearing, the following exchange between the trial court and Appellant took place:

THE COURT: We have two matters. The first one is, Mr Davido, there is a letter requesting appointment of new counsel.

MR. DAVIDO: Yes, sir.

THE COURT: That request is denied. The attorneys that are appointed for you will be able to represent you extremely well in my opinion.

Any request of yours to proceed pro se is also denied.

N.T., 11/14/2001, at 3. The remainder of the pre-trial hearing focused on Appellant's request to retain private counsel; various areas of dissatisfaction that Appellant had with his current counsel; and the conclusion of the remainder of the suppression hearing. The subject of *pro se* representation was not mentioned by Appellant during the remainder of the hearing even though he repeatedly asked for an extension of time to retain private counsel. *Id.* at 3, 10, 15, 16. On the first day of trial, before *voir dire,* the trial court returned to the subject of self representation and asked Appellant whether he still wished to represent himself. N.T., General Voir Dire,

11/28/2001, at 2. At that time, Appellant responded that he wanted to proceed with counsel.

Based upon a review of the totality of circumstances surrounding the request, we find that Appellant did not invoke his Sixth Amendment right to self representation. We acknowledge that the request was timely, as it was made before trial was scheduled to begin. *Owens supra.* Our inquiry does not end at that point, however, since the request must also be unequivocal. The substance of the October 15th letter focused on Appellant's desire for the appointment of new counsel or permission to retain private counsel because of the difficulty he was having with present counsel. Appellant's request to proceed pro se was posed as his only alternative if he was not afforded new counsel. Thus, it was employed as a bargaining device, rather than as a clear demand for self representation. Furthermore, at the hearing on the request, the trial court gave Appellant the opportunity to air his grievances, and Appellant's focus was on retaining new counsel; his need for a continuance; and his dissatisfaction with his current counsel. Appellant never returned to the issue of *pro se* representation. Lastly, when directly asked by the trial court whether he wanted to proceed *pro se* on the first day of trial, Appellant clearly indicated that he did not want to represent himself. Based on the totality of the circumstances surrounding Appellant's request to represent himself at trial, we conclude the request was equivocal.[14] Accordingly, Appellant never invoked his Sixth Amendment right of self representation, and the trial court did not err in failing to conduct a colloquy.[15]

14. In his concurring opinion, Justice Saylor states that the prevailing view in other jurisdictions is that the conditional aspect of the assertion, i.e., posed as an alternative to new counsel, does not render the request equivocal. Concurring opinion at 2. Our opinion today is not meant to undermine case law that suggests that an alternative request may be unequivocal; however such requests, even if conditional, must also be unequivocal. *Hamilton v. Groose*, 28 F.3d 859, 862 (8th Cir.1994). In this case, we conclude that regardless of whether Appellant's request was conditional, based on the totality of circumstances, it was equivocal.

15. The preferred course for the trial court to follow in this case was to inquire further about Appellant's request to proceed pro se during the November 14th hearing. In that way, the trial court could have

Appellant next argues that the police officers' warrantless entry into his place of residence violated the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. Thus, "virtually all evidence presented during trial was derivative evidence" obtained from the illegal search and thus, should be suppressed under "the fruit of the poisonous tree doctrine." Appellant's Brief at 22. Alternatively, Appellant offers that trial counsel was ineffective for failing to raise this claim either before or during trial and asks that we review the merits of his claim as a claim of ineffective assistance of trial counsel.

The Commonwealth responds that this issue is waived since Appellant did not raise it at trial, and it was raised for the first time in his "Statement of Matters Complained of on Appeal." The Commonwealth acknowledges that this court may exercise relaxed waiver over this claim, but argues that relaxed waiver is not proper in this instance, since a full record was not developed for this court's review. Alternatively, the Commonwealth addresses the merits of Appellant's issue and contends that the warrantless entry was justified as a protective sweep or under the exigent circumstances exception to the warrant requirement. *See Commonwealth v. Wittman*, 750 A.2d 327 (Pa.Super.Ct.2000) (protective sweep); *Commonwealth v. Miller*, 555 Pa. 354, 724 A.2d 895 (1999) (exigent circumstances).

■■■ The Notice of Appeal and the parties' briefs in this case were filed before this court's decision in *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385 (2003), which abrogated the relaxed waiver doctrine in capital appeals. Accordingly, we have discretion to review this claim as a claim of trial court error. We believe, however, in the absence of a suppression motion and accompanying hearing, this claim is better addressed as a claim of ineffectiveness. Accordingly, we will defer this claim of trial counsel ineffectiveness to the collateral

uncovered Appellant's true intentions and this issue would not have been available for Appellant to raise on direct appeal.

review stage. *See Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002).[16]

■ Appellant next challenges the trial court's decision to allow certain testimony by the Commonwealth's medical expert, Dr. Ross.[17] According to Appellant, Dr. Ross failed to establish a basis for his conclusion—that the victim expired because of the "hundreds of g's of forces" and the trauma that she sustained to her skull—since Dr. Ross never testified how he was able to calculate the force that was applied to her skull. Thus, Appellant concludes that Dr. Ross's conclusions were speculative and not based on a reasonable degree of medical certainty.

■ In Pennsylvania, expert testimony is sufficient to support a finding when given with a reasonable degree of medical certainty. *See Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711, 727 (1998). "The expert has to testify ... that in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence." *Menarde v. Philadelphia Transp. Co.,* 376 Pa. 497, 103 A.2d 681, 684 (1954). In analyzing a challenge to a medical expert's testimony, experts are not required to use "magic words." *Baez,* 720 A.2d at 727. "Instead, we look to the substance of their testimony to determine whether it meets the requisite standard." *Id.* Furthermore, an appellate court will not reverse a trial court's determination that a witness is qualified to testify as an expert

**16.** We do not believe this claim falls within the *Bomar* exception to reviewing claims of ineffectiveness on direct appeal. *See Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003). Although Appellant raised this claim in his Rule 1925 statement and the trial court addressed this ineffectiveness issue in its Opinion Pursuant to Pa.R.A.P. 1925, there has been no record developed "devoted to the ineffectiveness claims." *Bomar,* 826 A.2d at 854. Rather, the trial court relied on the evidence from the existing record in support of denying this claim. Accordingly, we believe this claim is better suited to collateral review.

**17.** Defense counsel made a timely objection to this testimony, albeit on different grounds. To the extent that this issue was waived, we will review it under the relaxed waiver doctrine. *See Freeman supra.*

unless we find an abuse of discretion. *Commonwealth v. Arroyo,* 555 Pa. 125, 723 A.2d 162, 171 (1999).

Appellant's specific challenge is to Dr. Ross's repeated references to "g forces" since Dr. Ross never testified as to how he calculated the force being applied to the victim's skull and thus, Appellant concludes that Dr. Ross's testimony was speculative. A review of Dr. Ross's testimony, however, reveals that his opinions were based on a reasonable degree of medical certainty:

> If, in fact she had a different type of trauma than she did here, we might have seen subdural bleeding. And subdural bleeding would also be to the outside of the brain, still connected to the brain. Still implies that you are dealing with hundreds of G's of force going through the brain. But that is the outside.
>
> In this particular case, you have bleeding and swelling, what I refer to as shearing injury, going directly to the center of the brain. And that is from massive repeated impacts going to the center of the brain and actually implies a tremendous amount of force being used to that area, in excess of hundreds of G's of force. And it's being directed deep down inside.
>
> * * * *
>
> But the point is, if you see those [twisters] and see indications of that, and someone is unconscious and you see marked swelling to the center of the brain and bleeding, you know they have sustained hundreds of G's of force.

N.T., 12/7/2001, 451–453.

Dr. Ross testified as to the cause of the victim's death based on his first hand observations. From those first hand observations, he concluded that the cause of her death was a brain injury as a result of force being applied to her skull. He was able to reach these conclusions based on the nature of the injuries to the brain, i.e., the shearing and twisting that the autopsy revealed, and the victim's condition at the time the police found her and at her arrival at the hospital. *See also id.* at 454 ("When it [g forces] is directed or

loaded to the head, and to the brain, that's what causes massive unconsciousness, causes swelling and the hemorrhaging, and causes somebody to go unconscious rapidly."). The reference to the number of "g forces" was merely a descriptive term used to describe the fact that the victim was hit with force; it was not a linchpin as to the cause of death. The substance of his testimony established the cause of death with a reasonable degree of medical certainty. Accordingly, Dr. Ross's testimony was not speculative and the trial court did not abuse its discretion in admitting it at trial.[18]

Appellant's remaining two challenges relate to the penalty phase of the trial. Appellant first challenges the trial court's decision to allow him to waive the presentation of mitigating circumstances and to proceed *pro se* during the penalty phase of the trial. In support of his challenge, Appellant makes three separate arguments. First, Appellant argues that he never asked to present his own defense. Second, he argues that new United States Supreme Court case law and existing rules of procedure demand reconsideration of whether a defendant can proceed *pro se* during the penalty phase of a capital trial. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000); Pa.R.Crim.P. 702(A) (demonstrating the State's interest in imposing fair sentences); 42 Pa.C.S. § 9711 (ensuring that the death penalty is imposed only in appropriate cases). Lastly, Appellant argues that the jury was improperly precluded from hearing any relevant mitigating evidence in violation of the Eighth Amendment.

**18.** Appellant also appears to challenge the weight of the evidence by arguing that Dr. Ross's conclusions were in conflict with the "incontrovertible physical evidence" as established by Dr. Shane's testimony. The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. *Commonwealth v. DeJesus*, 580 Pa. 303, 310–12, 860 A.2d 102, 107–08 2004 WL 2363726, *3 (Pa.2004). "Questions concerning inconsistent testimony and improper motive go to the credibility of the witnesses." *Id.* To the extent that Appellant is challenging the weight of the medical evidence, this court will not substitute its judgment for the finder of fact. *Id.*

■ In *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Court concluded that the Eighth and Fourteenth Amendments "require that the sentencer, in all but the rarest kind of capital case, *not be precluded* from considering as a mitigating factor any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant *proffers* as a basis for a sentence less than death." *Id.* at 604, 98 S.Ct. 2954 (emphasis added); *see also Commonwealth v. Michael,* 562 Pa. 356, 755 A.2d 1274, 1280 (2000) (plurality). *Lockett,* however, does not compel a defendant to present mitigating circumstances. *See also Michael supra.* Rather, in Pennsylvania, a capital defendant may waive the right to present mitigating evidence, so long as the waiver was knowing, intelligent, and voluntary. *Commonwealth v. Marinelli,* 570 Pa. 622, 810 A.2d 1257, 1275–76 (2002). Furthermore, we have repeatedly held that the death penalty statute, 42 Pa.C.S. § 9711, associated case law, and the Rules of Professional Conduct do not compel the admission of mitigating evidence.

> A criminal defendant has the right to decide whether mitigating evidence will be presented on his behalf. We will not remove that right and compel admission of such evidence. Defense counsel has no duty to introduce and argue evidence of mitigating circumstances where his client has specifically directed otherwise.

*Commonwealth v. Taylor,* 553 Pa. 144, 718 A.2d 743, 745 (1998) (*quoting Commonwealth v. Sam,* 535 Pa. 350, 635 A.2d 603, 611–12 (1993)). Most recently, we reiterated our preference that in order for such a waiver to be valid, the trial court should conduct a thorough on the record colloquy regarding the waiver of mitigating evidence given the consequences of such a decision. *See Commonwealth v. Wilson,* J–105–2001, at 23 n. 20 (citing *Commonwealth v. Crawley,* 514 Pa. 539, 526 A.2d 334, 340 n. 1 (1987)).

■ In this case, the relevant testimony indicated that Appellant requested that he be allowed to proceed *pro se* and to waive the presentation of mitigating evidence. At trial, the

following exchanges occurred between the court and Appellant:

THE COURT: Now, I have been informed by your attorneys that you do not wish them to present evidence on your behalf at this sentencing hearing. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Now Mr. Davido, do you know and do you understand that you have the right to be represented by counsel at these hearings?

THE DEFENDANT: I understand.

THE COURT: And you have the right to free counsel if you are indigent, and I think you know that because Mr. Gratton and Mr. Spahn are here to represent you.

Do you understand that?

THE DEFENDANT: Yes, sir.

N.T., 12/12/2001, at 996.

THE COURT: Now, Mr. Spahn stands there prepared at this time to defend against these aggravating circumstances.

By this I mean he is willing to put on whatever evidence is necessary and make any arguments that he thinks are relevant and important to the jury to try and convince them that these circumstances are not present, or that the Commonwealth was unable to prove them beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Spahn is here to do that. Do you wish him to do that in this case?

THE DEFENDANT: To defend me, no.

THE COURT: You don't wish him to defend you against the aggravating circumstances?

THE DEFENDANT: Correct.

*Id.* at 998. Further, trial counsel testified to the mitigating circumstances that he would present during the penalty phase and to the evidence he would present to counter the aggravating circumstances. *Id.* at 999–1004, 1006–08. Review of the

notes of testimony indicates that the trial court conducted an on the record colloquy regarding the waiver of mitigating evidence, which informed Appellant of the right to present proof of mitigating evidence, *Id.* at 998–99; the importance of mitigating evidence, *Id.* at 1004–06, 1008–09; the importance of having counsel represent him during the penalty phase of the trial, *Id.* at 1009–12; and after informing Appellant of such rights, asked Appellant if he reconsidered his decision, *Id.* at 1012, 1018. Accordingly, Appellant knowingly, intelligently, and voluntary waived his right to be represented during the penalty phase and his right to present mitigating evidence. Appellant's first and third arguments are without merit.

Turning to Appellant's second argument, Appellant acknowledges that this court has held that capital defendants have the right to self representation and has made no distinctions between the guilt and penalty phases. *See Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365, 1376–77 (1984). Appellant contends, however, that allowing a defendant to represent himself during the penalty phase of a capital case must be reconsidered in light of *Martinez v. Court of Appeal of California,* 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

In *Martinez,* the Court distinguished the Sixth Amendment right to self representation set forth in *Faretta* and held that there was no similar right for purposes of appeal. The Court was persuaded that the three "inter-related" rationales for the *Faretta* rule were not present in the appellate arena. 528 U.S. at 156, 120 S.Ct. 684. Specifically, there was no historical right to self representation in the appellate context, and the Sixth Amendment does not include any right to appeal. *Id.* at 159–60, 120 S.Ct. 684. Thus, "it necessarily follows that the Amendment itself does not provide any basis for finding a right to self-representation on appeal." *Id.* at 160, 120 S.Ct. 684. The Court then noted that the third reason supporting the *Faretta* decision—personal autonomy—was applicable in the appellate arena. *Id.* But, since the Sixth Amendment does not apply to appellate proceedings "any individual right to self-representation on appeal based on autonomy principles

must be grounded in the Due Process Clause." *Id.* at 161, 120 S.Ct. 684.

We need not consider the remainder of the *Martinez* decision, since the distinction from *Faretta* was premised on the fact that there was no Sixth Amendment right to self representation on appeal. The same is not true for the penalty phase of a capital appeal. Pursuant to the Sixth Amendment, a criminal defendant has a right to "dispense with counsel altogether and to defend himself." *Szuchon supra* (*citing Faretta*). This right applies to capital cases. *Id.; see also Commonwealth v. Davis,* 479 Pa. 274, 388 A.2d 324, 325 n. 3 (1978) (noting prior rule, which mandated counsel in capital cases regardless of the defendant's desire, must yield in light of *Faretta*). Accordingly, the Sixth Amendment applies to the penalty phase of a capital trial, and the underlying premise of *Martinez* does not apply to the instant case.

Lastly, Appellant argues that the trial court erred in failing to instruct the jury that life in prison means life without the possibility of parole in violation of *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). According to Appellant, the prosecutor injected the idea of "future dangerousness" into the proceedings by arguing that Appellant had a strong propensity for violence and that Appellant was a "jealous person when it comes to girlfriends"; Appellant "grew up watching ... his father hitting his mother"; Appellant "has a short fuse"; and that Appellant had, on prior occasions, accused his family members of having sexual relations with his girlfriends. Furthermore, during the penalty phase, the prosecutor was allowed to introduce the testimony of one of Appellant's former girlfriends in support of his propensity for violence. Appellant contends that the logical inference from all of this testimony was that Appellant would pose a future danger to society.

The Commonwealth points out that during this stage of the trial, Appellant was proceeding pro se and never requested a *Simmons* instruction. Rather, his counsel re-

quested the instruction and the trial court concluded that counsel was exceeding the bounds of his representation at this point in the proceedings.

■■■■■ The Commonwealth is correct that this issue is waived. Although, as noted previously, Appellant is entitled to the benefit of relaxed waiver, we have been clear that relaxed waiver is not appropriate with respect to a *Simmons* claim, "given the unique nature of such a claim." *See Commonwealth v. Dougherty*, 580 Pa. 183, 193–94, 860 A.2d 31, 36–37, 2004 WL 2358279, *4 (Pa. Oct. 20, 2004); *Freeman*, 573 Pa. at 557 n. 9, 827 A.2d at 400 n. 9. Accordingly, this claim is not subject to our review.[19]

■■■■ Upon our review of the record, it is clear that the sentence imposed was not a product of passion, prejudice, or any other arbitrary factor. 42 Pa.C.S. § 9711(h)(3). We further find that the evidence was sufficient to establish the aggravating factor found by the jury. *Id.* The jury found one aggravating factor—that Appellant committed the killing while in the perpetration of a felony, the felony of rape. N.T., 1043–44; 42 Pa.C.S. § 9711(d)(6).

**19.** We note that under existing precedent it is clear that the prosecutor did not inject future dangerousness into the proceedings, since, in this case, the references that Appellant complains about all relate to his past conduct and do not implicate his future dangerousness. *See Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1186 (1999); *Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344, 355 (1998). Likewise, the testimony by his ex-girlfriend was admitted to establish the aggravating circumstance of a significant history of violent felony convictions and did not involve future dangerousness. *Commonwealth v. May*, 551 Pa. 286, 710 A.2d 44, 47 (1998) (holding that the aggravating circumstance of a significant history of prior violent felony convictions involves only the defendant's past conduct, not his future dangerousness.).

As in *Commonwealth v. Dougherty*, 580 Pa. 183, 195 n. 9, 860 A.2d 31, 38 n. 9 (Pa.2004), however, we would be remiss not to note that after this case was tried, the United States Supreme Court revisited the question regarding the sufficiency of the evidence and/or argument required to implicate a *Simmons* instruction. *See Kelly v. South Carolina*, 534 U.S. 246, 253–54, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002); *Dougherty supra* (explaining the possible impact of the *Kelly* decision). Like the resolution of this issue in *Dougherty*, we similarly need not discuss *Kelly* in this case, since no appropriate objection was registered.

Accordingly, we affirm the verdict and sentence of death imposed upon Appellant, Tedor Davido, by the Court of Common Pleas of Lancaster County.[20]

Justice EAKIN did not participate in the consideration or decision of this case.

Former Justice LAMB did not participate in the decision of this case.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE concurring.

I join the Majority Opinion with the exception of its analysis of appellant's claim that the trial court erred in denying his request to represent himself at trial without first conducting a counsel waiver colloquy. In reaching the merits of this claim, the Majority rejects the Commonwealth's argument that the claim is waived because appellant's lawyers never requested a counsel waiver colloquy. The Majority essentially adopts a rule which would require trial courts to *sua sponte* colloquy defendants, even when their lawyers do not make such a request. I write separately to this issue because I believe that the Commonwealth is correct that this claim is waived and should be reviewable only under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, as a claim sounding in the ineffective assistance of counsel.

The basis for appellant's claim that he sought to exercise his Sixth Amendment right to represent himself at trial is a *pro se, ex parte* letter the counseled appellant forwarded to the trial court. Following the court's discussion of the letter with appellant, neither he nor his court-appointed attorneys ever

---

**20.** The Prothonotary of the Supreme Court is directed to transmit the full and complete record of this case to the Governor forthwith. 42 Pa.C.S. § 9711(i).

asked for a colloquy to determine if appellant truly wished to proceed *pro se.* Nor did his attorneys ever cite any authority to the trial judge concerning the scope of the right to self-representation or the alleged constitutional necessity of a colloquy.

The record reveals that on October 15, 2001, approximately six weeks prior to the scheduled trial date, and while he was represented by two court-appointed attorneys, James A. Gratton, Esq., and Merrill M. Spahn, Esq., appellant mailed a four page handwritten letter from prison directly to the trial judge. There is no indication that appellant copied the letter to his lawyers or the District Attorney: it was addressed only to the trial judge; it bears no courtesy copy notation; and appellant did not file it with the clerk's office.

In his handwritten letter, appellant voiced the sorts of complaints about court-appointed counsel which criminal defendants often voice early in the preparation of criminal cases; he repeatedly requested replacement of one (but only one) of his two appointed attorneys; and he suggested, if his demand was not met, he might invoke a non-existent right to hybrid representation, *i.e.,* he stated that he would have no alternative but to represent himself with his second lawyer serving as his "assistant." Appellant's *ex parte* communication opened with, "Sir, I write you in Hope that you may ap[p]oint to me new counsel." Appellant then went on to express his dissatisfaction with Attorney Gratton in great detail over four pages and requested that Gratton be replaced. Appellant, apparently, had no complaints about Attorney Spahn. On the second and third pages, appellant alleged that the preliminary hearing transcript had been altered, that the victim's medical records were being withheld, and that a detective tampered with evidence and witness statements. Appellant noted that the medical examination of the deceased victim showed that she had pre-existing injuries, and requested that the victim's body be exhumed for further examination. Appellant again asked the trial court to replace Gratton.

In the final page of his letter, appellant stated: "Your [H]onor this is a nightmare and [I] plea [sic] that the truth be told that is [I] ask of you. [I]n that if you do not ap[p]oint new coun[s]el th[e]n [I']ll have no other alternative but to ex[erc]ise my 6th amendment to represent my self and have Mr. Spahn as my assistant." Exhibit No. 1, at 4 (grammatical corrections in brackets). Appellant also stated: "[I]f you decide not to ap[p]oint new coun[s]el on the fact of irrecon[ci]l-able differences. I am asking simply that I be[ ] given a fair trial and a decent defen[s]e. I pray that you act on these vital issues I bring to your attention." *Id.* Appellant closed his letter by asking for a postponement until unspecified paper-work was completed and witnesses were interviewed.

At the next trial listing on November 14, 2001, at which both Mr. Gratton and Mr. Spahn were present, the trial judge began by addressing appellant, noting that he had received appellant's *ex parte* letter requesting appointment of new counsel, and stated that the request was denied because "[t]he attorneys that are appointed for you will be able to represent you extremely well in my opinion." The court then stated that "[a]ny request of yours to proceed *pro se* is also denied." Neither appellant nor his appointed counsel objected to the court's ruling on the qualified *pro se* request; nor did appellant or his counsel request a colloquy on the *pro se* issue, or cite any authority to the court (such as *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), or *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995)) to suggest that its ruling had denied appellant his constitutional right to self-representation. After the ruling, appellant was permitted to "state his grievances" on the record, and he did so at length, complaining about Mr. Gratton, but never addressing any desire to proceed *pro se*.

At the very next listing of the case two weeks later, the trial court began the proceedings by asking appellant if he still wished to represent himself. N.T. 11/28/01, 2. As opposed to renewing his earlier, qualified request for partial self-representation, appellant responded: "Your Honor, you were cor-

rect in allowing me to keep Mr. Gratton, and I wish him to represent me." *Id.* The court then proceeded to jury selection. Once again, neither appellant nor his lawyers asked for a colloquy on the issue of self-representation, nor did they even suggest that the Sixth Amendment required such a colloquy.

On this record, I respectfully disagree with the Majority's conclusion that appellant did not waive his claim of trial court error. At all relevant times, appellant was represented by presumptively competent counsel. Once counsel enter an appearance, they are not potted plants. Lawyers are obliged to present arguably meritorious issues to the trial judge, including issues involving the constitutional right to counsel and the coordinate right to self-representation first recognized in *Faretta*, even if such issues may invite discord between attorney and client.[1] Can it seriously be doubted on this record that if appellant and/or his lawyers had squarely invoked the right to self-representation, cited to *Faretta*, and then asked for a voluntariness colloquy that the trial court would have conducted the colloquy? In my view, the Commonwealth is correct to a mathematical certainty that there is no preserved claim of trial court error on this record; rather,

1. There may be something to be said for the notion that the trial court in this case should simply have forwarded appellant's improper *ex parte* communication to counsel and deferred entirely to counsel to forward any appropriate motions, rather than entertaining the complaint. This Court has emphasized that a criminal defendant who is currently represented by counsel is not entitled to "hybrid" representation—*i.e.*, to litigate certain issues *pro se* while counsel represents his interests in other regards. *See Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 301–02 (1999); *Commonwealth v. Rogers,* 537 Pa. 581, 645 A.2d 223 (1994); *Commonwealth v. Ellis,* 534 Pa. 176, 626 A.2d 1137 (1993). The course not taken also would have the benefit of including the Commonwealth in what should have been an adversarial process, since any motion counsel would file would have to be served upon the Commonwealth; that course would also thereby increase the likelihood that important issues would be discovered and explored, or foreclosed where appropriate. As is, the Commonwealth in this case was left totally in the dark as to the substance of the *ex parte* contact which was the subject of the November 14 hearing. But the failure of the trial court to simply forward the motion to counsel hardly absolved counsel of their responsibilities to their client.

the only claim possibly viable is one sounding in the ineffective assistance of trial counsel which, under this Court's precedent, should await collateral review under the PCRA. *See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002).

Enforcing the requirement of issue preservation of this constitutional claim is advisable and necessary because the existing record is inadequate to render a non-arbitrary judgment as to whether appellant was truly deprived of **any** right. It is apparent from the several record colloquies that appellant had continuing contact with both of his lawyers. These lawyers may have something pertinent to say concerning, for example, whether appellant had expressed a view to them in confidence concerning self-representation—as opposed to, for example, hybrid representation. Indeed, the communications between counsel and client may explain why counsel never requested that appellant be permitted to proceed *pro se* or why appellant changed his mind. On the other hand, proper review of the claim as one sounding in counsel ineffectiveness may reveal that appellant truly did desire to represent himself, but was impeded by counsel.

The Majority Opinion suggests that if appellant had clearly and unequivocally requested to proceed *pro se,* the trial court would have had an obligation to *sua sponte* conduct a colloquy. I see no reason why a trial court should be obliged to conduct a colloquy that a counseled defendant never asks for. I think this Court should be circumspect in the *sua sponte* duties we impose on trial judges, in cases with counseled litigants, to act as supplemental advocates for one of the parties. Moreover, imposing a *sua sponte* requirement by opinion, rather than specifically memorializing it in a rule, risks uneven awareness and enforcement. Appellant's claim, which is in the nature of a collateral attack since it forwards arguments that were never forwarded to the trial judge, should be raised only under the PCRA.

Although I would prefer not to reach this waived claim, I respect the Majority's contrary view, and I recognize that the

merits decision it renders, concerning when an issue of self-representation has properly been placed in issue, is a novel and important one. On the merits of this substantive question, the learned opinion of the Chief Justice is typically scholarly, wise, and persuasive. Accordingly, I join his analysis of the merits, notwithstanding my differences on the preliminary waiver question.

Justice SAYLOR concurring.

I join the majority opinion, subject to a modest difference in the approach to Appellant's claim related to his request to proceed *pro se* at trial. In concluding that Appellant's assertion of his desire for self-representation was equivocal, the majority relies on three factors: 1) that the request was posed in the alternative to a request for substitute counsel; 2) that Appellant did not further pursue the request subsequent to its denial by the trial court at a pre-trial hearing; and 3) that Appellant ultimately withdrew the request. *See* Majority Opinion, at 65–67, 868 A.2d at 439–40. Respecting the first ground, the prevailing view in other jurisdictions, with which I concur, is that the conditional aspect of the assertion of a desire to proceed *pro se*, posed as an alternative to a request for substitute counsel, does not render the request equivocal.[1]

1. *See, e.g., Wilson v. Walker,* 204 F.3d 33, 38 n. 3 (2d Cir.2000) ("'[A] defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses the view in the alternative, simultaneously requests the appointment of new counsel, or use[s] it as a threat to obtain private counsel.'" (quoting *Williams v. Bartlett,* 44 F.3d 95, 100 (2d Cir.1994))); *Adams v. Carroll,* 875 F.2d 1441, 1445 (9th Cir.1989) (same); *State v. Blom,* 682 N.W.2d 578, 613 (Minn.2004) ("[A] motion for self-representation is not equivocal simply because it is made as an alternative plan in case the court does not grant a defendant's motion for a different attorney."); *Gallego v. State,* 117 Nev. 348, 23 P.3d 227, 236 (2001) (same, and opining that the correct procedure is for the trial court to deny the request for substitute counsel (where warranted) and ascertain whether the defendant's wish to represent himself remains extant in light of the fulfillment of the condition); *State v. Brown,* 342 Md. 404, 676 A.2d 513, 519 n. 5 (1996); *State v. Richards,* 456 N.W.2d 260, 264 (Minn.1990) ("The case law is clear that '[a] request to proceed *pro se* is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel.'" (citations omitted)).

The second factor, that Appellant failed to pursue his request for self-representation after the trial court had specifically and unambiguously denied it, seems to me to carry very little (if any) weight. In my view, as of the time that the trial court made its initial ruling, Appellant presented a sufficiently clear and unequivocal (albeit conditional) request for self-representation to implicate the constitutional concerns identified in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Indeed, I believe that the only circumstance cited by the majority that undercuts Appellant's present position is his affirmative withdrawal of the self-representation request on the eve of trial, in the following exchange:

> THE COURT: ... And I thought that, after you started seeing what was going on in the case, you would probably agree that you would be far better off having attorneys to represent you rather than you representing yourself. So at this time, do you still wish to represent yourself, or do you want Mr. Gratton and Mr. Spahn [the public defenders] to represent you at this time?

> [Appellant]: Your Honor, you were correct in allowing me to keep Mr. Gratton, and I wish him to represent me.

N.T. 11/28/01 at 2. In my view, this withdrawal brings the matter squarely within a line of the abandonment/waiver decisions,[2] which I find to be the preferable rationale to support the disposition here.

2. *See, e.g., Wilson*, 204 F.3d at 37–39 (finding waiver subsequent to a clear and unequivocal assertion of the right of self-representation); *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir.1982) ("The present case presents an example of waiver through subsequent conduct after an initial request."); *United States v. Kennedy*, 564 F.2d 1329, 1340 (9th Cir.1977) (holding, in a similar situation, that "the request [to proceed *pro se*] was withdrawn and the right consciously and knowingly waived"); *cf. Williams v. State*, 655 P.2d 273, 275 (Wyo.1982) (finding waiver of a prior assertion of the right of self representation through continued use of counsel); *Tucker v. State*, 92 Nev. 486, 553 P.2d 951, 954 (1976) (recognizing that a defendant waives his right to self-representation where he accepts and acquiesces in representation by a court-appointed attorney).

As noted, I join the balance of the majority's reasoning relative to the remaining issues presented.