J-A03006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DERRICK LEWIS THOMAS | |
| Appellant | No. 581 MDA 2016 |

Appeal from the Judgment of Sentence February 18, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002118-2015

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                   **FILED MARCH 24, 2017**

Derrick Lewis Thomas appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following his conviction of manufacture, delivery, or possession with intent to manufacture or deliver,[1] and possession of drug paraphernalia.[2]  We affirm.

On January 16, 2015, a confidential informant (CI) engaged in a controlled buy of $190.00 worth of crack cocaine from an individual known as "Howie."  The controlled buy occurred in the area of the Family Dollar Store on South 13th Street in Harrisburg, and it involved two vehicles, a blue pick-up truck and a silver Dodge Durango.  The CI was approached by a

_____

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(32).

man who exited the rear passenger side of the Durango and gave the CI $190.00 worth of crack cocaine in exchange for marked money. The man then got into the blue pick-up truck. Both the Durango and the pick-up truck were stopped.

Officer Timothy Brooks and his partner approached the Durango, and Thomas was identified as the front-seat passenger. Officer Brooks asked Thomas to get out of the car; in doing so, Thomas placed a plastic grocery bag that had been on his lap onto the floor of the car. The officers arrested Thomas. The bag contained 102 grams of cocaine, bags used for distributing drugs, and a digital scale. Though unemployed, Thomas had $1,560 in cash on his person.

Thomas filed a motion to suppress, which the court denied. Following trial, the Honorable Richard A. Lewis presiding, a jury convicted Thomas of the aforementioned charges. The court sentenced Thomas to 90 to 180 months' incarceration. On appeal, Thomas raises the following issues:

1. Whether the trial court erred by not granting [Thomas'] suppression motion as it was evident that the informant arranged a drug deal with "Howie" who was a back seat passenger in a silver Dodge Durango, the silver Durango or the driver was not a target of the investigation, and other than the fact that the silver Durango was the transportation to bring "Howie" to the meeting location, there was not sufficient probable cause to stop said vehicle as it was not implic[ated] in a crime.

2. Whether the trial court erred by not granting [Thomas'] post sentence motion as it relates to the sufficiency of the evidence as there existed [g]laring contradictions as to what was found in the car, where it was found and what color the alleged [bag] containing cocaine was.

3. Whether the trial court erred by not granting [Thomas']
post sentence motion as it relates to the weight of the
evidence as there existed [g]laring contradictions as to
what was found in the car, where it was found and what
color the alleged ba[g] containing cocaine was, and to not
grant a new trial would so offend the senses based on a
sworn officer swearing that the cocaine at issue was found
in a dark color bag in the back seat of the suspect vehicle
and not in a light colored plastic bag in the front of the
vehicle.

Appellant's Brief, at 6.

Thomas first contends that the suppression court erred in denying his motion to suppress because the officers did not have probable cause to stop the silver Durango. He argues that the officers "saw no illegal activity on the part of the silver Durango, the front seat passenger or the driver[,] yet still ordered the car to be stopped." Appellant's Brief, at 17. Essentially, Thomas claims that since the person who delivered the drugs to the CI "was a rear seat passenger" in the silver Durango, there was no probable cause to stop the vehicle. *Id.* We disagree.

Our standard of review of an order denying a motion to suppress is well established:

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa. Super. 2006). *See also Commonwealth v. Feczko*, 10 A.3d 1285 (Pa. Super. 2010) (en banc).

At the suppression hearing, Officer Brooks testified as follows:

Q:     Did you approach the vehicle?

A:     Yes. We were alerted to a vehicle that was parked in the Asia Mall parking lot?

Q:     Did you approach the vehicle?

A:     **I did approach it after vice said that it was a good deal [successful controlled buy] and I guess they moved in on the individual that sold the controlled substance. We moved to a vehicle that was involved in the incident.**

\* \* \*

Q:     So you approached an SUV that was involved—that you knew to be involved in the transaction?

A:     Yes.

Q:     Did you approach the driver's side or passenger's side?

A:     I pulled my marked unit and positioned myself on the passenger side.  My partner Office Pupo and I exited, drew our firearms and ordered everyone's hands up.  Vice units, I believe, moved in from the driver's side. . . . [The defendant] was the passenger in the vehicle.

Q:     He was the back passenger or the front passenger?

A:     Front passenger.

Q:     So the driver's area passenger?

A:     Yes.

Q:     Did he comply when you initially requested he lift his hands?

A:     Yes, he put his hands directly up and we opened the passenger side door.

- 4 -

Q:      Did you immediately observe any contraband on the defendant's person or in the defendant's area?

A:      Yes, he had a bag and it appeared to be containing cocaine on his lap.

Q:      Was it a smaller or large amount of crack cocaine?

A:      It appeared to be a large amount.

* * *

Q:      What was it packaged in?

A:      I am not sure.  It was like some type of plastic bag.  I just know that when he threw his hands up, the plastic bag was there.  He had to remove the bag to get out of the vehicle.  He sat it down and he was able to exit the vehicle and we took him into custody.

Q:      Did you retrieve any other contraband from the defendant's person?

A:      I didn't personally.  I witnessed Officer Pupo do a quick pat down of the person.  [There] was a large bulge in his jeans pocket.  She removed that item and handed it at the time [to] Detective Gautsch and it was a  large  sum of U.S. currency.

N.T. Suppression Hearing, 11/19/15, at 37-40 (emphasis added).

Whether probable cause exists to stop and search an individual depends on whether "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which [an officer] has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." **Commonwealth v. Rodriguez**, 585 A.2d 988, 990 (Pa. 1991).  Probable cause requires only a probability, and not a prima facie showing, that an officer's belief is correct.  **Commonwealth v. Thompson**,

985 A.2d 928, 931 (Pa. 2009). Courts apply a totality of the circumstances test to determine whether probable cause exists. *Id.*

Here, officers observed "Howie," the seller, get out of the silver Durango and, after the transaction was over, get into another car. Based on their observation of this illegal drug transaction, the officers had information sufficient to warrant a suspicion that whoever was in the silver Durango was involved in the drug transaction as well. Indeed, the officers did not stop the silver Durango until after receiving confirmation that the controlled buy was successful. *See* N.T. Suppression Hearing, *supra* at 37. We agree with the Commonwealth that there was a "very clear lineal tie between" the silver Durango, "Howie," the seller, and the confirmed drug transaction. *Id.* at 73.

Based on the totality of the circumstances summarized above, the officers had sufficient probable cause to stop the silver Durango. *See* ***Rodriguez***, *supra*; ***Thomas***, *supra*. Accordingly, we find no error.

Thomas next contends that the evidence was insufficient to sustain his convictions. When reviewing the sufficiency of evidence, our standard of review is whether, whether viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. ***Commonwealth v. McClendon***, 874 A.2d 1223, 1228-29 (Pa. Super. 2005).

In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part, or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Id.* (quoting *Commonwealth v. Robinson*, 817 A.2d 1153, 1158 (Pa. Super. 2003)). *See also Commonwealth v. Davido*, 868 A.2d 431, 435 (Pa. 2005).

In order to be convicted under 35 P.S. § 780-113(a)(30) of PWID, the Commonwealth must prove that Thomas "both possessed the controlled substance and had an intent to deliver that substance." *Commonwealth v. Parsons*, 570 A.2d 1328, 1334 (Pa. Super. 1990), citing 35 P.S. § 780-113(a)(3). When examining whether a controlled substance was possessed with intent to deliver, the court must consider all of the facts and circumstances surrounding the possession of the substance. *Commonwealth v. Torres*, 617 A.2d 812, 814 (Pa. Super. 1992). Additionally, the Commonwealth may establish the elements of a crime entirely by circumstantial evidence. *Id.* Thus, possession with intent to

deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of paraphernalia for consumption. *Id.*

Here, the Commonwealth established that when Officer Brooks asked Thomas to exit the vehicle, Thomas removed a plastic bag from his lap and placed it on the floor in front of him in the front passenger seat. The bag contained 102.07 grams of cocaine, empty plastic sandwich bags (used for packaging cocaine), and a digital scale. Additionally, officers found $1,560 in U.S. currency on Thomas' person. Further, the Commonwealth presented the testimony of expert witness Detective John Goshert, a former police officer with the Harrisburg Police Department, who spent 24 years in the Organized Crime and Vice Control Unit and had been involved in thousands of drug investigations. Detective Goshert testified that in his opinion the above-mentioned facts indicated that Thomas possessed the cocaine with intent to deliver, rather than for his own personal use. N.T. Trial, 2/10-11/16, at 174-195.

Viewing this evidence in the light most favorable to the Commonwealth, as verdict winner, the trier of fact could find that Thomas possessed the cocaine with intent to deliver in violation of section 780-115(a)(30).

Thomas was also convicted of possession of drug paraphernalia under 35 P.S. § 780-113(a)(32), which provides that the following activities are prohibited:

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

The term drug paraphernalia is defined in 35 P.S. § 780-102(b)(9) to include among other items:

(9) Capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances.

Thus, it is clear that ordinary packaging materials, such as small plastic sandwich bags, can be drug paraphernalia.  Here, the Commonwealth established through Detective Goshert's expert testimony that the small plastic sandwich bags and the digital scale were "sales-related" paraphernalia.  N.T. Trial, **supra** at 190-94.  **See also** 35 P.S. § 780-102 (providing guidance as to factors to be considered when determining whether item is drug paraphernalia).  Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the Commonwealth presented sufficient evidence to find Thomas guilty of possession of drug paraphernalia in violation of section 780-113(a)(32). **Torres**, **supra**.

In his final issue, Thomas claims the verdict is against the weight of the evidence.  The factors to be considered by an appellate court when addressing a weight of the evidence challenge are as follows:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. The court should not grant a new trial because of a mere conflict in the testimony, or because the judge on the same facts would have arrived at a different conclusion. "Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013).

Here, there was conflicting testimony from the officers as to the color and location of the plastic bag containing the cocaine. Thomas asks this Court to re-weigh the evidence and assess the credibility of the witnesses presented at trial, a task that is beyond our scope of review. It was within the jury's province to make credibility determinations regarding the conflicting testimony. *Champney*, *supra*; *see also Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). The trial court reviewed this

weight claim and determined that the verdict was not so contrary to the evidence as to shock its conscience. Thus, the court properly denied this claim. We find no abuse of discretion. ***Champney***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2017