J-S37029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER BAJ | : | |
| | : | |
| Appellant | : | No. 392 EDA 2022 |

Appeal from the PCRA Order Entered December 29, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0000834-2018

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.: **FILED FEBRUARY 28, 2023**

Christopher Baj appeals from the order, entered in the Court of Common Pleas of Northampton County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Upon review, we affirm.

On December 29, 2018, at approximately 6:00 p.m., Mia Darling-Baj (Darling) served Baj, her husband of 8 years, with divorce papers. N.T. Jury Trial, 10/30/18, at 15-16. For the next few hours, the couple calmly discussed how the divorce would impact their finances and their minor children, J.B. (age 7) and A.B. (age 4) (collectively, Children). *Id.* at 12, 17-19. Subsequently, Baj went for walk with J.B., *id.* at 164, after which the Children were put to bed. *Id.* at 165. Darling and Baj continued talking until Darling fell asleep at approximately 12:00 a.m. *Id.* at 21. Thereafter, Baj began to "have vision issues" and his "chest hurt." *Id.* at 172. Baj then decided to take walk. *Id.*

at 173. Prior to his walk, Baj testified that he holstered his firearm, which he "frequently carries" and drank vodka, which "stabilized [him] a little bit." *Id.* at 173.

Darling woke up when Baj walked upstairs, hitting the baby-gate at the top of the steps. *Id.* at 26, 175. Darling testified that Baj was "standing in front of the light switch trying to turn it on. . . . [he] kept swiping at the light switch." *Id.* at 28. Darling got out of bed, grabbed her phone and walked toward the bathroom. *Id.* at 27-28. She saw Baj, his face pale, standing with the firearm holstered in his gym shorts. *Id.* at 29-30. Darling went to reach for the weapon, Baj swatted her hand away, and Darling locked herself in the bathroom. *Id.* at 32-33. Darling testified that Baj fired his weapon three times into the bathroom. *Id.* at 34. Baj testified that these shots were aimed at the door handle as his goal was to unlock the bathroom door so that he and Darling could continue discussing the divorce. *Id.* at 177. After the shots were fired, Baj was able to push down the door. *Id.* at 38-39. Darling ran out of the bathroom and out of the house. *Id.* at 39.

Darling testified that on her way down the steps, J.B. was standing in the doorway of his room. Darling testified that J.B. said, "Daddy?" *Id.* at 39. Baj told J.B. to go back to bed. *Id.* The Children were sleeping in the rooms adjacent to the master bedroom while the shooting occurred. *Id.* at 22 (Darling testifying that J.B.'s room is visible from master bathroom and that all bedrooms are upstairs); *id.* at 25 (Darling testifying that very narrow closet separates A.B.'s room from master bedroom); *see* Com. Ex. 7, 14.

- 2 -

While in the bathroom, Darling had called the police, *id.* at 38, who responded along with the Special Emergency Response Team (SERT) and a hostage negotiator. The 911 call was played for the jury. *Id.* at 40.

Investigator Anthony Stevens, employed by Bethlehem Township Police Department arrived at the scene at around 3:00 a.m. and witnessed officers on a "bull horn of sorts[,] trying to get [Baj] to come out [of the house]. *Id.*, 10/29/18, at 33, 35. At this point, Darling's phone was also being used to call Baj. *Id.* at 41. Investigator Stevens testified that Darling "[told Stevens] that she wants her kids, that her kids were inside the house, and they're being held hostage." *Id.* at 35.

Corporal John Chulock, employed by the Pennsylvania State Police, arrived at the scene at approximately 5:00 a.m. *Id.* at 10/30/18, at 102. Upon arriving, Chulock learned that the Children were still inside the residence. *Id.* at 104. According to Chulock, this meant that it could turn into a hostage situation at any time. *Id.* at 107. Chulock established the following procedures: enter the house immediately if Baj enters either of the Children's rooms armed; do not allow Baj to exit the perimeter armed; exhaust all means of non-deadly apprehension prior to the use of deadly force; and protect the officers and any third parties. *Id.* at 104. Additionally, the plan to get the Children safely out of the residence was as follows: "[L]eave the kids [] in bed until [J.B] started moving around, at which time we'd start talking to him via audio feed on the [nanny] camera," and J.B. would wake up A.B. and take him down the steps and out the front door. *Id.* at 112.

Although the Children were able to safely leave the home through the front door, *id.* at 113, Stevens testified that Baj did not voluntarily release the Children nor assist in the Children's exit. *Id.*, 10/29/18, at 58. Darling testified that "guys with big guns and all their gear on ran by carrying two little kids in pajamas with bare feet." *Id.*, 10/30/18, at 43. Chulock testified that J.B. indicated that when he was leaving the residence, Baj was at the table with his head down. *Id.* at 126.

After the Children were removed from the house, police tried various tactics to establish communication with Baj, none of which was successful. *Id.* at 113-117. Tactics included calling Baj's cell phone and home phone numbers, *id.* at 113, using a loudspeaker to explain to Baj how police wanted Baj to exit the home, *id.* at 115, and playing a tape recording of Darling requesting a peaceful resolution of the situation. *Id.* at 115-116. Although Baj answered one of the phone calls, Baj could only be heard breathing and crying. *Id.* at 114.

In order to gain a visual into the home, police used a "rook" to take the screen off the front door, break through the front door, and to break through a window on the backside of the house. *Id.* at 116-17. Baj was seen moving around the residence, *id.* at 125, and also sitting on a couch hugging a pillow with a blanket on his lap. *Id.* at 119.

Baj was removed from the home at approximately 12:00 p.m. on October 30, 2018, *id.* at 121, almost nine hours after the situation began. To remove Baj from the residence, police used a 40-millimeter baton, a foam

launcher used to break windows, *id.* at 117, and then deployed a flashbang through the window to divert Baj's attention from the police. *Id.* at 118. Next, Baj was tased while the entry team entered the house through the front door to apprehend him. *Id.* at 121.

Thereafter, Investigator Stevens executed a search warrant for the home. He testified that Baj's 38-caliber Taurus was recovered from above a cabinet over the kitchen refrigerator, in its holster, with two bullets remaining inside. *Id.*, 10/29/18, at 45-46, 48. Additionally, three 38-caliber bullets were found in the bathroom. *Id.* at 42-43.

On October 29, 2021, Baj proceeded to a jury trial with John Waldron, Esquire, serving as counsel. On October 31, 2018, Baj was convicted[1] of one count each of aggravated assault,[2] recklessly endangering another person[3] and simple assault,[4] and two counts of endangering the welfare of children (EWOC).[5] On December 6, 2018, Eric Dowdle, Esquire, entered his

_____

[1] In addition, Baj was originally charged with two counts of recklessly endangering another person (REAP) (his two sons) and attempted first-degree murder. The trial court granted Baj's pre-trial motion dismissing the two counts of REAP, and the jury was unable to reach a verdict on the attempted murder charge.

[2] 18 Pa.C.S.A. § 2702(a)(1).

[3] *Id.* at § 2705.

[4] *Id.* at § 2701(a)(2).

[5] *Id.* at § 4304(a)(1).

appearance as counsel to represent Baj at sentencing.[6]  On December 19, 2018, Baj was sentenced to an aggregate term of 6 years to 17 years' incarceration.  Through Attorney Dowdle, Baj filed post-sentence motions, which were denied.  On April 18, 2019, Alfred Stirba, Esquire, entered his appearance as appellate counsel.  Baj filed a direct appeal to this Court challenging the sufficiency of the evidence to sustain his convictions for aggravated assault and simple assault.  This Court affirmed his sentence. **Commonwealth v. Baj**, 237 A.3d 430 (Pa. Super. May 4. 2020) (Table) (unpublished memorandum decision).

Subsequently, Baj filed a timely *pro se* PCRA petition alleging that trial counsel, Attorney Waldron, was ineffective.  Thereafter, Matthew Deschler, Esquire, was appointed as PCRA counsel.  Attorney Deschler filed a **Turner/Finley** no-merit[7] letter on March 24, 2021, in which he set forth that, in his professional opinion, Baj's *pro se* petition raised meritless claims. However, Attorney Deschler also identified new PCRA claims he believed had merit, including the ineffectiveness of Attorneys Dowdle and Stirba for failing to challenge the EWOC convictions, and that Baj's simple assault and

---

[6] On the record at sentencing, the court stated that Attorney Waldron was no longer serving as counsel, and that Attorney Dowdle had entered his appearance.  N.T. Sentencing, 12/19/18, at 1.

[7] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

aggravated assault convictions should have merged for the purposes of sentencing. Attorney Deschler also requested to withdraw.

The PCRA court held hearings on May 6, 2021 and July 22, 2021 to allow Baj to develop the record regarding the ineffectiveness claims. At both hearings, Baj was permitted to raise claims from his *pro se* petition and to personally question prior counsel. At the May 6, 2021 hearing, the PCRA court orally denied Attorney Deschler's request to withdraw. On May 18, 2021, Attorney Deschler filed another motion to withdraw, to which the PCRA court did not respond, believing that its prior denial of Attorney Deschler's request had been sufficient. Response to Order, 5/3/22, at 3.

On August 11, 2021, Baj filed an amended *pro se* PCRA petition raising various new issues. On August 30, 2021, Baj, through Attorney Deschler, filed a counseled amended PCRA petition raising the issues Attorney Deschler had identified in his no-merit letter. On December 29, 2021, the PCRA court granted relief on the merger claim, found the claims in Baj's amended *pro se* petition waived and/or meritless, and denied relief on all other claims. Baj filed a timely notice of appeal to this Court.

On April 4, 2021, this Court ordered clarification as to whether Attorney Deschler remained as counsel on appeal, and, if Baj wished to proceed *pro se*, directed the PCRA court to hold a ***Grazier***[8] hearing. The PCRA court held a hearing on April 29, 2022, at which time Baj clearly expressed that he wanted

---

[8] ***Commonwealth v. Grazier***, 713 A.2d 81, 82 (Pa. 1998).

Attorney Deschler to remain as counsel and, accordingly, the court denied Attorney Deschler's request to withdraw.

The following claims are now ripe for our review.

1. Did the [PCRA] court err and/or abuse its discretion by failing to grant [Attorney Deschler's] request to withdraw as counsel for Baj, which operated to deny Baj the ability to raise those matters that Baj wished to raise before the [PCRA c]ourt but that [Attorney Deschler] believed to be without merit?

2. Did the [PCRA c]ourt err and/or abuse its discretion by failing to find that Attorneys Dowdle and Striba were ineffective for failing to challenge Baj's convictions for [EWOC] based upon insufficient evidence?

3. Did the [PCRA c]ourt err and/or abuse its discretion by failing to find that Attorney Dowdle was ineffective for failing to challenge Baj's convictions for [EWOC] on the ground that the convictions were against the weight of the evidence?

Appellant's Brief, at 4.

Our review of the denial of a PCRA petition is well-settled:

[O]ur scope of review is limited by the parameters of the act. Our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. Moreover, in general we may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action; this is so even if we rely on a different basis in our decision to affirm.

***Commonwealth v. Heilman***, 867 A.2d 542, 544 (Pa. Super. 2005) (quotations and citations omitted).

Baj first contends that the PCRA court erred where, on May 6, 2021, it denied Attorney Deshler's request to withdraw rather than holding a ***Grazier*** hearing. Baj claims that, although he would have preferred an attorney, he wished to proceed *pro se* if Attorney Deschler would not raise the claims Baj

wished to raise. Baj also argues that in failing to hold a *Grazier* hearing, and then permitting Baj to proceed through hybrid representation, his claims were waived. Appellant's Brief, 11-13. Baj is entitled to no relief.

Pursuant to *Grazier*, the court must conduct an on-the-record colloquy where there is a "timely and unequivocal request" to proceed *pro se*. *Grazier*, 713 A.2d at 82. In *Commonwealth v. Davido*, 868 A.2d 431 (Pa. 2005), our Supreme Court determined that where a defendant's request was posed as an alternative if he was not afforded new counsel, the defendant did not invoke his right to proceed *pro se*, and, therefore, a *Grazier* hearing was not required. *Id.* at 438, 440. The *Davido* Court deemed the request a "bargaining device, rather than a clear demand for self[-]representation." *Id.* at 440.

Instantly, during the May 6, 2021 hearing, Baj did not unequivocally state that he wished to proceed *pro se*. Rather, Baj requested new appointed counsel.

> Baj: Your Honor, also, [Attorney] Deschler stated to me that he would withdraw. I think I need to have him withdraw, in order for an attorney to be appointed for me.
>
> Court: No. I am not going to appoint someone else. You only get one appointment. You got a very competent and intelligent attorney, who is very diligent. That's all you get, one appointment.

N.T. PCRA Hearing, 5/6/21, at 45.[9]   Similar to **Davido**, Baj's request was posed as an alternative, where he sought the appointment of new counsel. Thus, the PCRA court did not err in failing to hold a **Grazier** hearing at this time.  Subsequently, at the April 29, 2022 hearing,[10] Baj clearly indicated that he did not wish to proceed *pro se.*  Indeed, Baj stated "I con[cur] with the [c]ourt denying [Attorney] Deschler's motion to withdraw, and that it is my understanding that [Attorney Deschler] will continue to represent me."  N.T. Hearing, 4/29/22, at 7.

Further, Baj's claims were not waived when the PCRA court erroneously permitted hybrid representation.[11]  In **Commonwealth v. Williams**, 151

_____

[9] In Baj's *pro se* supplemental brief, which was ordered by the court at the May 6, 2021 hearing, Baj framed the court's denial of this request for different appointed counsel as a denial of a request to retain a private attorney.  *Pro se* Supplemental Brief, 6/6/21, at 1, 3.  This interpretation is not supported by the record.

[10] Responding to our April 4, 2022 order, the PCRA court stated, "the Superior Court filed its remand order with a directive to conduct a **Grazier** proceeding." Response to Order, 5/3/22, at 6.  We note that our order was not to compel the PCRA court to hold a **Grazier** hearing.  Rather, it directed the PCRA court to *clarify* whether Attorney Deschler remained as counsel and take the steps necessary in this regard, which may have included holding a **Grazier** hearing.

[11] Baj argues that the PCRA court erred in permitting Baj to proceed through hybrid representation.  Pennsylvania Rule of Appellate Procedure 121(g) limits a counseled party's ability to file documents on his or her own behalf.

> Hybrid representation.— Where there is counsel of record, a party may file only the following documents *pro se*:  (i) a notice of appeal; (ii) a request to change or remove counsel; (iii) a response to a motion to withdraw that has been filed by counsel of record; (iv) a complaint that existing counsel has abandoned

*(Footnote Continued Next Page)*

- 10 -

A.3d 621 (Pa. Super. 2016), this Court stated that "will not accept a *pro se* motion while a [defendant] is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities." **Id.** at 623. Accordingly, any determination the PCRA court made regarding Baj's *pro se* claims is of no consequence because Baj's *pro se* filings were, in fact, legal nullities.

In light of the foregoing, the PCRA court did not err in failing to hold a **Grazier** hearing on May 6, 2018, and Baj's *pro se* claims were not waived.

Baj next claims that Attorney Dowdle, who filed Baj's post-sentence motion, and Attorney Striba, who represented Baj on direct appeal, were ineffective for failing to challenge Baj's convictions for EWOC based on insufficiency of the evidence.

One avenue of relief under the PCRA is to demonstrate "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. 9543(a)(2)(ii).

_____

the party; or (v) an application to file a petition for allowance of appeal *nunc pro tunc*. Any other document that a party attempts to file *pro se* will be noted on the docket but not accepted for filing. This rule is not intended to provide an independent basis for jurisdiction where it does not otherwise exist.

Pa.R.A.P. 121(g). Accordingly, Baj's various *pro se* filings should have been sent directly sent to Attorney Deschler. **See Commonwealth v. Mason**, 130 A.3d 610, 671 (Pa. 2015) (*pro se* filings shall be sent directly to counsel who may then decide whether to act on the defendant's concern).

- 11 -

Counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

**Commonwealth v. Holt**, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

> This Court's review of sufficiency claims is well-settled:

> When reviewing challenges to the sufficiency of the evidence, [this Court] evaluates the record in the light more favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. In addition, the court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented.

**Commonwealth v. Smith**, 146 A.3d 257, 261-62 (Pa. Super. 2016) (quotations and citations omitted).

> The offense of EWOC is denied as follows:

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or

- 12 -

supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection[,] or support.

18 Pa.C.S.A. § 4304(a)(1). Our Supreme Court has stated that statutes protecting juveniles are "basically protective in nature" and, thus, "cover a broad range of conduct in order to safeguard the welfare and security of our children." *Commonwealth v. Mack*, 359 A.2d 770, 772 (Pa. 1976), quoting *Commonwealth v. Marlin*, 305 A.2d 14, 18 (Pa. 1972). "Whether particular conduct falls within the purview of the statute is to be determined within the context of the common sense of the community." *Commonwealth v. Retkofsky*, 860 A.2d 1098, 1099 (Pa. Super. 2004) (citations omitted).

Baj argues that "[t]here is no evidence he actually, much less knowingly, endangered either of his children" when he fired a gun at his wife through the bathroom door of their master bedroom, while the children were asleep in their rooms. Appellant's Brief, at 16-17. This claim is meritless.

Pennsylvania courts have established a three-part test to determine whether a defendant acted knowingly with regard to the crime of EWOC.

1. The [defendant] was aware of his[] duty to protect the child;

2. The [defendant] was aware that the child [was] in circumstances that could threaten the child's physical or psychological welfare; and

3. The [defendant] has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Bryant*, 57 A.3d 191, 197 (Pa. Super. 2012) (citations and brackets omitted).

- 13 -

First, Baj is a parent and, thus, is aware that he has a duty to protect his Children. "A parent is charged with the duty of care and control, and subsistence and education necessary for the child's physical, mental and emotional health and morals." **Commonwealth v. Barnhart**, 497 A.2d 616, 620-21 (Pa. Super. 1985); **see Commonwealth v. Foster**, 764 A.2d 1076, 1082 (Pa. Super. 1999) ("every parent [] has a duty of care to their child").

Second, Baj was aware his Children were in circumstances that threatened their physical and psychological welfare. Baj's argument that "the [] children were elsewhere in the large residence at the time [the shots were fired]," Appellant's Brief, at 16, misrepresents the facts. Although the residence may be large and the Children were not in the same room into which the shots were fired, Baj knew the Children were home and in their bedrooms that are adjacent to the master bedroom. N.T. Jury Trial, 10/30/18, at 22, 29; **Commonwealth v. Whitfield**, 260 A.3d 129, *14-15 (Pa. Super. filed July 9, 2021)[12] (unpublished memorandum decision) (evidence sufficient to prove EWOC where "bullet easily could have gone through the ceiling to where his son was sleeping instead [of toward its intended target]"). Moreover, Baj had consumed alcohol and was walking around the home, **see** N.T. Jury Trial, 10/30/18, at 125, with a loaded firearm. **Id.** at 147 (Baj testifying that he was a "little hazy from the effects of the vodka"); **id.** at 173, 176 (Baj had

---

[12] **See** Pa.R.A.P. 126 (unpublished non-precedential memorandum decisions of Superior Court filed after May 1, 2019 may be cited for persuasive value).

"holstered his firearm" before going for a walk and it remained holstered when he returned to his bedroom).

Third, Baj failed to take "steps reasonably calculated to achieve success" in protecting his Children. *Commonwealth v. Cardwell*, 515 A.2d 311, 315-16 (Pa. Super. 1986) (evidence sufficient to prove EWOC where mother took no "concrete steps" to remove daughter from home where sexual abuse was ongoing). Here, Baj argues that the Children were unharmed because they were sleeping in their bed throughout the incident and then exited the house through the front door without any interference from Baj. Appellant's Brief, at 18. However, the record shows that Baj failed to take steps reasonably calculated to protect his Children when he fired a gun in the room adjacent to where the Children were sleeping and merely told J.B. to go back to sleep when he woke up during the incident. Moreover, Baj took no concrete steps to get the Children safely out of the home. *See Cardwell*, *supra.*

In light of the foregoing, Baj's sufficiency claim lacks arguable merit and, thus, the PCRA court did not err in determining that counsel was not ineffective for failure to raise it on appeal. *Holt*, *supra*.

Baj next contends that Attorney Dowdle was ineffective for failing to challenge his EWOC convictions on weight of the evidence grounds. Baj is afforded no relief.

"Counsel will not be deemed ineffective if any reasonable basis exists for his or her actions." *Commonwealth v. Loner*, 836 A.2d 125 (Pa. Super. 2003). Additionally, "[c]ourts should not deem counsel's strategy or tactic

- 15 -

unreasonable unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the court actually pursued." *Commonwealth v. Koehler*, 36 A.3d 121, 133 (Pa. 2012). Moreover, in *Commonwealth v. Showers*, 782 A.2d 1010 (Pa. Super. 2001), our Court stated, "it is the obligation of appellate counsel to present issues, in counsel's professional judgment, go for the jugular, and [to] not get lost in a mound of other colorable, nonfrivolous issues which are of lesser merit." *Id.* at 1016.

Instantly, Attorney Dowdle explained his decision to forgo raising a weight of the evidence claim:

> As I discussed earlier, the weight [of the evidence argument] normally does not work, number one. And number two, the issue here is one where, as I have said before, you have children sleeping in their beds, while their father is drunk with a handgun and passes out at the dining room table [] as the [SERT] is breaking windows and beginning an assault on the house. You're not getting anywhere with that.

N.T. PCRA Hearing, 7/22/21, at 12. Additionally, Attorney Dowdle stated that he does "not ever try to raise issues that have very little merit." *Id.* at 13. Here, Attorney Dowdle chose to forgo raising an issue that he believed was of very little merit in order to not "blunt [the] argument with regard to [the issues] that matter, *id.* at 13, and, thus, presented a reasonable basis for his actions. *Loner*, *supra*.

Accordingly, because Attorney Dowdle had a reasonable basis for his particular course of conduct, the PCRA court did not err in determining that counsel was not ineffective for failure to raise a weight of the evidence argument. *Holt*, *supra*.

We conclude that the record supports the PCRA court's findings. *Heilman*, *supra*. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2023