J-A06030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEON SEWELL | : | |
| | : | |
| Appellant | : | No. 178 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 5, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004754-2020

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: JUNE 12, 2023**

Appellant Leon Sewell appeals from the judgment of sentence imposed following his conviction for criminal trespass and related offenses. Appellant challenges the sufficiency of the evidence and argues that the trial court erred in denying his request to proceed *pro se*. We affirm.

The trial court summarized the underlying facts of this matter as follows:

> [Appellant] and Sandra Harness (referred to herein as "the victim") were former paramours who were no longer together due to the fact that the victim had obtained a Protection From Abuse [(PFA)] order prohibiting [Appellant] from being [at the victim's residence] due to a prior violent incident between [Appellant] and the victim.

Trial Ct. Op., 6/30/22, at 2.

---

[*] Retired Senior Judge assigned to the Superior Court.

At trial, the victim testified that on May 21, 2020, she was awakened by Appellant attempting to open her bedroom window, which was on the second floor of her residence. N.T. Trial, 9/14/21, at 47-48. The victim stated that after she told Appellant to leave, Appellant entered through the window, shattering the glass. *Id.* After Appellant entered the victim's residence, the trial court explained:

> [Appellant] pushed [the victim] down on her bed. He placed his hand on her neck and began squeezing. He kept telling her to "shut-up." She was unable to fight him off. [Appellant] pushed the victim down the steps from the second floor to the first floor. When she got to the first floor, [Appellant] ordered her to open the back door. The alarm in the residence activated and [Appellant] screamed at the victim to turn it off. Acting as though she was going to the front door to deactivate the alarm, she quickly opened the door and ran to a neighbor's house where her neighbor called 911. During the incident, [Appellant] grabbed the victim's cell phone from her hand and threw it. After the incident, she was unable to find her phone. The phone was eventually found in the chimney of the house. The victim suffered injuries to her neck and hand during the incident. Police officers immediately responded to the scene. Officers observed broken glass around the second-floor window and the window was broken out. There was a ladder propped up against the exterior of the house.

Trial Ct. Op., 6/30/22, at 2 (some formatting altered).

Following the incident, the Commonwealth charged Appellant with aggravated assault, strangulation, burglary, theft by unlawful taking, criminal trespass, and defiant trespass.[1]

---

[1] 18 Pa.C.S. §§ 2702(a)(1), 2718(a)(1), 3502(a)(1)(i), 3921(a), 3503(a)(1)(ii), and 3503(b)(1)(i), respectively.

Prior to trial, Appellant filed a *pro se* motion to replace his trial counsel with another court-appointed attorney. **See** Appellant's Motion to Replace Counsel, 11/10/20. Therein, Appellant stated that trial counsel was "ineffective, not trustworthy" and that trial counsel had failed to communicate with Appellant's family. **Id.** at 2. The trial court did not rule on Appellant's motion.

On January 24, 2021, Appellant filed a motion seeking to waive his right to counsel and proceed *pro se*. At a hearing on February 2, 2021, Appellant reiterated that he was dissatisfied with trial counsel, wished to invoke his right to self-representation, and believed that he would be "better off" without counsel. N.T. Hr'g, 2/2/21, at 5, 17. After the trial court questioned Appellant about the quality of trial counsel's representation, the trial court concluded that Appellant had failed to demonstrate that trial counsel "was not doing his job." **Id.** at 17. The trial court then attempted to dissuade Appellant from proceeding *pro se* by asking a series of questions concerning Appellant's knowledge of the criminal court system. **Id.** at 17-18; 24-32.

At one point during the hearing, Appellant asked the trial court: "Why can't I get a court appointed attorney or get me a bond and I can go out there and go to work and buy me an attorney?" **Id.** at 21. In response, the trial court stated: "[Appellant], this isn't Let's Make a Deal. This isn't Judge Judy or Judge Jerry or whatever the heck those shows are. This is real court. So what I am suggesting to you is refocus and accept the fact that you have an experienced trial lawyer who is doing his job . . . ." **Id.**

Ultimately, the trial court concluded:

**THE COURT:** You don't know the basic things that are involved in your case. You don't know any of that. I can't let you do it. I can't. If you get a bad result and appeal, the Superior Court would say to me, did you go to law school, Judge. You let this guy do this when he proved he doesn't know what he's doing?

Did you even go to law school, Judge? Maybe you studied pharmacy. You didn't go to law school. That's what the Superior Court would tell me. They would say it nicer than that, but that's what they would tell me. So, no, I can't let you do it. You have demonstrated your lack of ability to proceed on your own behalf. You have also failed to demonstrate that [trial counsel] isn't doing his job. Consequently, your motion to represent yourself is denied. [Trial counsel] is your lawyer. Work with him. Reevaluate your position and work with him, and we will see you all in April [for] the status conference. We are done.

*Id.* at 31-32 (formatting altered).

On March 16, 2021, Appellant filed a second *pro se* motion to replace trial counsel with another court-appointed attorney. Therein, Appellant reiterated his dissatisfaction with trial counsel's representation. The trial court did not rule on Appellant's motion. On April 9, 2021, trial counsel filed a motion to withdraw stating that there had been "an irretrievable breakdown in the attorney-client relationship." Petition to Withdraw, 4/9/21. The trial court denied trial counsel's motion.

The matter proceeded to a jury trial on September 14, 2021. Ultimately, the jury found Appellant guilty of criminal trespass, theft, and defiant trespass, but not guilty on the remaining charges. On January 5, 2022, the trial court sentenced Appellant to an aggregate term of thirty-six to eighty-four months'

incarceration. Appellant filed timely post-sentence motions, which the trial court denied.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

1. Is Appellant entitled to a new trial . . . when he was forced to proceed to trial before a jury while represented by counsel, rather than proceeding *pro se* as he desired, with said trial having been conducted in violation of his self-representation and due process rights under U.S. Const. amend. VI & XIV, Pa. Const. art. I § 9, and 42 Pa.C.S. § 2501(b)?

2. Should Appellant's conviction for [criminal trespass] be vacated with prejudice owing to the Commonwealth's failure to present sufficient evidence . . . establishing (A) that he had gained entry to the victim's residence by voluntarily, rather than inadvertently, breaking the windowpane in the bedroom window through which he entered the home; or, alternatively, (B) that, in entering via that portal, he had entered the home through an opening not designed for human access?

Appellant's Brief at 3.

## Representation by Counsel

In his first claim, Appellant argues that he is entitled to a new trial because the trial court violated his right to self-representation. *Id.* at 22-23. Specifically, Appellant asserts that his request "should have been granted since it was timely, it was unequivocal, and it was knowing and intelligent" and "was denied only because the trial judge believed it to be an unwise decision, which is an impermissible basis for denying *pro se* status." *Id.* at

33. In support, Appellant notes that he was fully informed about the consequences of waiving his right to counsel, but unequivocally maintained that he wished to proceed *pro se*. ***Id.*** at 38-39. Appellant concludes that "his waiver of his right to counsel was valid, and his exercise of his right to proceed *pro se* ought to have been respected." ***Id.*** at 39. Therefore, Appellant requests that we remand the matter for new trial. ***Id.***

"A defendant's right to act as his own counsel has long been recognized under the law . . . . [I]t is implicit in the Sixth Amendment to the United States Constitution and explicit in Article I, Section 9 of the Pennsylvania Constitution." ***Commonwealth v. Tighe***, 224 A.3d 1268, 1280 (Pa. 2020) (***Tighe II***); ***see also Faretta v. California***, 422 U.S. 806, 821 (1975). "Whether that right was violated presents a question of law, for which our review is *de novo*." ***Commonwealth v. Tighe***, 184 A.3d 560, 566 (Pa. Super. 2018) (***Tighe I***) (citation omitted).

Our Supreme Court has stated that although a defendant's right to self-representation is guaranteed, it is not absolute. ***Commonwealth v. Brooks***, 104 A.3d 466, 474 (Pa. 2014). To exercise the right to self-representation, a "defendant must demonstrate that he knowingly, voluntarily and intelligently waives his right to counsel." ***Id.*** (citation omitted); ***see also*** Pa.R.Crim.P. 121(A)(2). Additionally, "to invoke the right of self-representation, the request to proceed *pro se* must be made timely and not for purposes of delay and must be clear and unequivocal." ***Commonwealth v. Davido***, 868 A.2d 431, 438 (Pa. 2005).

"[T]he inquiry surrounding whether a request to proceed *pro se* is unequivocal is fact intensive and should be based on the totality of the circumstances surrounding the request." *Id.* 439. Specifically, our Supreme Court has explained:

> [C]ourts generally consider a myriad of factors in concluding whether a request was unequivocal including: whether the request was for hybrid representation or merely for the appointment of standby or advisory counsel, the trial court's response to a request, whether a defendant has consistently vacillated in his request, and whether a request is the result of an emotional outburst.

*Id.* at 438–39 (citations omitted).

Generally, Pennsylvania courts have held that "a request for [*pro se*] status is timely when it is asserted before 'meaningful trial proceedings' have begun." **Commonwealth v. El**, 977 A.2d 1158, 1163 (Pa. 2009) (citations omitted). "In the context of a jury trial, the consensus is that proceedings become 'meaningful' as soon as the selection of jurors begins." **Id.**

> Further, our Supreme Court has explained:
>
> To ensure a proper waiver, the trial court must conduct a "probing colloquy," . . .
>
> The "probing colloquy" standard requires Pennsylvania trial courts to make a searching and formal inquiry into the questions of (1) whether the defendant is aware of his right to counsel or not and (2) whether the defendant is aware of the consequences of waiving that right or not. Specifically, the court must inquire whether or not: (1) the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent; (2) the defendant understands the nature of the charges against him and the elements of each of those charges; (3) the defendant is aware of the permissible range of sentences and/or fines for the offenses charged; (4) the

- 7 -

defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules; (5) [the] defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and (6) the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

If the trial court finds that the defendant's waiver is not knowing, voluntary, and intelligent after a probing colloquy, the court may prevent the defendant from proceeding *pro se*.

*Commonwealth v. Blakeney*, 946 A.2d 645, 655 (Pa. 2008).

Additionally, our Supreme Court has reiterated that "a defendant's choice to proceed *pro se* must be honored out of that respect for the individual which is the lifeblood of the law even when the defendant acts to his or her own detriment." *Commonwealth v. Spotz*, 47 A.3d 63, 83 (Pa. 2012) (citing *Faretta*, 422 U.S. at 834) (formatting altered).

Here, Appellant filed a motion seeking to waive his right to counsel and proceed *pro se* approximately three months before trial was scheduled to begin. At the hearing, Appellant confirmed that he wished to proceed *pro se*, that he was aware of his right to counsel, and that he understood the consequences of waiving that right. N.T. Hr'g at 24-25. Ultimately, the trial court concluded that Appellant's request was "ridiculous," that Appellant had "demonstrated [his] lack of ability to proceed on [his] own behalf," and that Appellant had "failed to demonstrate that [trial counsel wasn't] doing his job." *Id.* at 27; 31-32.

- 8 -

In its Rule 1925(a) opinion, the trial court further explained:

In this case, this court did not believe that [Appellant] knowingly and intelligently waived his right to counsel. [Appellant's] request came just three months prior to the scheduled court date. [Appellant's] frustration with trial counsel stemmed from [Appellant's] erroneous belief that his case had been delayed by the dilatory actions of trial counsel. On the contrary, the delay in [Appellant's] trial stemmed solely from the cessation of jury trials due to the COVID-19 pandemic. Upon questioning from the court, [Appellant] admitted that he did not understand the hearsay rule and the exceptions thereto. [Appellant] did not know what a motion in *limine* or a motion to strike for cause were. He asked the court to provide him with a different court-appointed attorney. It was clear to this court that [Appellant] did want counsel to assist him at trial and that he did not knowingly and intelligently waive his right to counsel. [Appellant] was simply frustrated with his trial counsel. For those reasons, this court denied [Appellant's] motion.

Trial Ct. Op. at 12-13 (formatting altered).

Following our review of the record, we agree with the trial court's conclusion that Appellant's request to proceed *pro se* was not unequivocal.[2] *See Tighe I*, 184 A.3d at 566; *Davido*, 868 A.2d at 438. As noted previously, Appellant initially filed a motion in which he claimed that trial counsel was

_____

[2] As noted previously, the trial court also concluded that Appellant was not entitled to proceed *pro se* because Appellant "demonstrated [his] lack of ability to proceed on [his] own behalf." *See* N.T. Hr'g at 32. However, although the trial court appears to have believed that Appellant was incapable of successfully defending himself at trial, we emphasize that "a defendant's choice to proceed *pro se* 'must be honored out of 'that respect for the individual which is the lifeblood of the law' even when the defendant acts to his or her own detriment." *Spotz*, 47 A.3d at 83. Therefore, to the extent the trial court denied Appellant's motion based on Appellant's lack of knowledge concerning the criminal court system, that ruling was erroneous. *See id.* In any event, because we conclude that Appellant's request was not unequivocal, Appellant is not entitled to relief on this issue.

ineffective and requesting that the trial court appoint new counsel on his behalf. After the trial court declined to rule on Appellant's *pro se* motion, Appellant filed a motion requesting to proceed *pro se*. During the **Faretta** colloquy, Appellant indicated that he wished to proceed *pro se* because he was "better off," without his current counsel, reiterated his displeasure with trial counsel's representation, and stated: "Why [can't I] get a court appointed attorney or get me bond and I can go out there and go to work and buy me an attorney?" **See** N.T. Hr'g at 5, 31. After the trial court denied Appellant's motion to proceed *pro se*, Appellant filed an additional *pro se* motion again reiterating his dissatisfaction with trial counsel's representation and requesting a new attorney. Based on the totality of these circumstances, where Appellant has consistently vacillated in his request to proceed *pro se*, we are unable to conclude that Appellant's request for self-representation was unequivocal. **See Davido**, 868 A.2d at 438. Therefore, the trial court properly denied Appellant's motion.

## Sufficiency of the Evidence

Appellant also challenges the sufficiency of the evidence supporting his conviction for criminal trespass, which was graded as second-degree felony. Appellant's Brief at 40-41. Initially, Appellant concedes that there was sufficient evidence to establish the elements of criminal trespass, graded as a third-degree felony. **Id.** However, Appellant argues that the Commonwealth failed to prove the "breaking" element necessary for a second-degree felony conviction because there was no evidence that Appellant "deliberately broke

the windowpane" or that by "entering through the window[, Appellant] entered through an opening that was not designed for human access under any circumstances." *Id.* at 47. Further, Appellant contends that he could not be convicted for criminal trespass because "one reasonable interpretation of the testimony presented at trial was that the windowpane shattered via an involuntary act . . . we cannot say beyond a reasonable doubt that Appellant's act in causing the windowpane to break was a voluntary act." *Id.* at 48. Therefore, Appellant requests that we vacate his judgment of sentence and remand for further proceedings. *Id.* at 41.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018).

Pursuant to Section 3503(a)(1)(ii) of the Crimes Code, a person commits criminal trespass, graded as a felony of the second degree, "if,

- 11 -

knowing he is not licensed or privileged to do so, he . . . breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S. § 3503(a)(1)(ii); (2). "Breaks into" is defined as "[t]o gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." 18 Pa.C.S. § 3503(a)(3).

Here, at trial, the victim testified that she awoke in the middle of the night to the sound of her bedroom window "being raised." N.T. Trial, 9/14/21, at 43, 47. At that time, the victim saw Appellant outside of the bedroom window, which was located on the second floor of her residence. *Id.* The victim stated that after she refused Appellant's request to open the door and told him to leave, Appellant entered the residence through the window. *Id.* at 47-48. As a result, the glass window shattered. *Id.* The victim further explained that after Appellant entered the home, the victim started screaming, and Appellant "pushed [her] down on the bed . . . choking [her] and telling [her] to shut up." *Id.* at 48.

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to support Appellant's conviction for criminal trespass. *See Palmer*, 192 A.3d at 89. In light of the victim's testimony, it was reasonable for the jury to infer that Appellant committed a "breaking" when he entered through the bedroom window and caused the glass window to shatter. Further, as noted previously, the Commonwealth's evidence "need not preclude every possibility of innocence." *See id.* Therefore, to the extent

Appellant claims that the victim's testimony does not preclude the possibility that Appellant broke the window "via an involuntary act," he is not entitled to relief. For these reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2023