J-S09005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN ZALENSKI | : | |
| | : | |
| Appellant | : | No. 879 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 13, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0022211-2022

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED AUGUST 12, 2025**

Steven Zalenski appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after the trial court found him guilty of contempt for violating a Protection from Abuse (PFA) order.[1]  We affirm.

On February 1, 2022, Zalenski's ex-wife, Nicole Zalenski, obtained a final PFA order that barred Zalenski from all contact with her.  In December, Zalenski sent vulgar text messages to Nicole and threatened to rape her.  The Commonwealth thereafter filed three charges in the Philadelphia Municipal Court at docket MC-51-CR-0022211 2022:  contempt, terroristic threats,[2] and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S.A. § 6114(a).

[2] 18 Pa.C.S.A. § 2706(a)(1).

harassment.[3]  On October 5, 2023, the parties proceeded to a bench trial on all charges before the Honorable Holly J. Ford.  The trial court found Zalenski guilty of all three charges and, on February 13, 2024, sentenced him on the contempt charge to six months of probation.

Zalenski filed a timely notice of appeal limited to the contempt charge to this Court.[4]  Zalenski complied with the trial court's order to file a Pa.R.A.P.

_____

[3] 18 Pa.C.S.A. § 2709(a)(4).

[4] Zalenski received an aggregate sentence of two and one-half to five years of incarceration and one year of probation for the remaining two charges.  He separately filed a notice of appeal to the Court of Common Pleas seeking a *de novo* trial on those two counts pursuant to 42 Pa.C.S.A. § 1123 (establishing jurisdiction of Philadelphia Municipal Court for criminal offenses punishable by no more than five years of imprisonment and providing right of appeal to the Court of Common Pleas).  Those two sentences have been vacated and the courts below separately docketed those charges at CP-51-CR-1068-2024. **See** Order, 6/14/24 (single page).

Relatedly, we conclude that we have jurisdiction over the contempt charge. In **Commonwealth v. Burton**, 624 A.2d 138 (Pa. Super. 1993), a contempt of PFA charge was docketed in Philadelphia Municipal Court.  A court of common pleas judge found Burton guilty, and Burton sought a *de novo* trial in the trial court.  The trial court quashed and Burton appealed.  We held that the PFA Act generally vests jurisdiction in the court of common pleas for contempt of PFA proceedings and therefore "takes precedence over the broader and more general language of the Philadelphia Municipal Court statute." **Id.** at 142.  However, the **Burton** Court concluded that a *de novo* trial was not warranted where, as here, a common pleas judge presided over the trial, on the basis that there is no right to a jury trial for violations of 23 Pa.C.S.A. § 6114(b) and a second trial would permit "two bites of the apple." **Id**. at 143.  Additionally, 42 Pa.C.S.A. § 1123(a.1) authorizes an appeal to this Court from a municipal court judge's contempt finding.  We accept that Judge Ford acted as a court of common pleas judge in finding Zalenski guilty.

1925(b) concise statement of errors complained of on appeal and the court issued a Rule 1925(a) opinion. On appeal, he raises two issues:

> 1. Did the trial court deny [Zalenski] his right to counsel and his right to a fair trial where the trial court's pretrial colloquy regarding [Zalenski]'s desire and ability to represent himself or be represented by counsel was so deficient as to leave only confusion and doubt as to the status of counsel, resulting in an untenable hybrid representation?

> 2. Did the trial court err and abuse its discretion in proceeding to trial without arraigning [Zalenski] and having [Zalenski] enter a plea, depriving him of his right to a fair trial and due process of law, when [Zalenski] showed visible indications that he was not competent to proceed, and subsequently at sentencing revealed that he had no idea that he was a defendant in a criminal trial?

Appellant's Brief, at 2.

The following facts are pertinent to Zalenski's first claim. On September 26, 2023, the parties appeared for a status hearing before the Honorable Christopher Mallios. Marissa McGarry, Esquire, informed the court that she had been appointed to represent Zalenski, who was incarcerated. At the hearing, Zalenski told the court that he was "going to represent" himself. N.T. Status Hearing, 9/26/23, at 4. Zalenski simultaneously stated that he would "hire private counsel" if released from custody and asked the trial court to do so. *Id.* at 9-10. During this hearing, Zalenski repeatedly asserted his innocence and sought to "explain to [Judge Mallios] what went on over these past couple of years[.]" *Id.* at 9. The trial court reminded Zalenski that the purpose of the hearing was to determine "the status of your attorney." *Id.* The court asked, "Do you want to represent yourself at the trial?" *Id.* Zalenski replied, "No. I would like to be released." *Id.* The trial court declined that

- 3 -

request and again asked if Zalenski wished to represent himself at the trial. *Id.* at 11. Zalenski replied, "I have nothing to hide. Your Honor, it's all right here." *Id.* The trial court ordered Attorney McGarry to act as standby counsel and permitted Zalenski to represent himself at trial. *Id.*

On October 5, 2023, the parties appeared for trial before Judge Ford on all charges. Attorney McGarry characterized Judge Mallios as having "ordered Mr. Zalenski to proceed *pro se* with the Defender Association as standby [c]ounsel." N.T. Nonjury Trial, 10/5/23, at 6. The trial court stated its understanding that Zalenski "would like to represent" himself. *Id.* Zalenski agreed. The court indicated that it "need[ed] to ask" some questions and asked Attorney McGarry to supply a list for the colloquy. Attorney McGarry replied, "I have just the (unintelligible) pass that up?" *Id.* at 8. The trial court interjected, "And did I hear [Zalenski] say he did not waive his right to an attorney?" *Id.* Zalenski replied, "I never waived my right to [c]ounsel, Your Honor. Not to private counsel." *Id.* Following a brief discussion, Judge Ford informed Zalenski that she had "appointed counsel" to defend him and that he had the option to "waive your representation by counsel" if he rejected Attorney McGarry's assistance. *Id*. at 10. Zalenski opted to proceed with counsel. *Id*. at 13. He was convicted of all charges and sentenced as previously stated.

We now turn to Zalenski's first issue, which subsumes two distinct claims regarding Attorney McGarry's status. The first alleges that the trial court failed to conduct a colloquy regarding his right to waive counsel. The second avers

that the trial court created a "hybrid counsel" situation as Zalenski, at times, acted as his own counsel. For each claim, Zalenski alleges that the trial court violated his constitutional rights. This presents a pure question of law for which our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Gibson*, 333 A.3d 710, 715 (Pa. Super. 2025).

"[A] defendant is entitled to counsel at trial [and] violating this right can never be harmless error." *Arizona v. Fulminante*, 499 U.S. 279, 294 (1991). But, a judge may not "compel a defendant to accept a lawyer he does not want." *Faretta v. California*, 422 U.S. 806, 833 (1975). The right to decline the assistance of counsel "is based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty," *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017), and a defendant is entitled to relief *per se* if counsel is forced upon him. The High Court has recognized that while self-representation "usually increases the likelihood of a trial outcome unfavorable to the defendant, . . . its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984).

Relatedly, the trial court has a duty to ensure that the defendant understands the consequences of proceeding *pro se*. The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (quotation marks and citation omitted). Rule of Criminal Procedure 121 implements that directive

by requiring the trial court to cover several topics before allowing a defendant to waive his or her right to counsel. An invalid Rule 121 colloquy results in a new trial on direct appeal. *Commonwealth v. Brazil*, 701 A.2d 216, 219 (Pa. 1997).[5]

Zalenski has not consistently alleged whether the trial court erred by allowing him to proceed without counsel or whether the trial court forced him to accept counsel against his wishes.[6] For instance, in his Rule 1925(b) statement, Zalenski argued that the "waiver of counsel colloquy was constitutionally defective thereby improperly granting his request to proceed *pro se* and denied [Zalenski] his right to counsel[.]" Pa.R.A.P. 1925(b) Statement, 5/22/24, at unnumbered 2 ¶ (a). The second point of error likewise alleged that he was forced to proceed *pro se*, as the "lower court erred" by granting Zalenski's "motion to waive counsel and proceed *pro se*, as [Zalenski]'s waiver was not knowing, intelligent and voluntary." *Id*. at ¶ (b). These arguments suggest that Zalenski's claim is that he acted *pro se* without an adequate waiver of his right to counsel.

_____

[5] However, Rule 121 "goes farther than what the United States Constitution requires" as "a technically-deficient waiver of counsel colloquy is not the same as a constitutionally deficient waiver of counsel." *Commonwealth v. Pou*, 201 A.3d 735, 746 (Pa. Super. 2018).

[6] The entitlement to counsel with respect to the contempt charge is statutory. *See* 23 Pa.C.S.A. § 6114(b)(3). We accept that the constitutional principles apply because Zalenski was entitled to counsel with respect to the charge of terroristic threats, and the trial court's determination of the right to counsel applied to all three charges.

However, Zalenski also claimed that "hybrid representation . . . occurred at his trial," with the trial court "ignor[ing] his efforts to represent himself[.]" *Id.* at unnumbered 3 ¶ (e). Thus, Zalenski simultaneously maintained that the trial court ordered him to act *pro se* while also forcing counsel upon him.

Setting aside the prospect of waiver based on Zalenski's attempt to raise mutually exclusive theories, we conclude that he is not entitled to relief. He avers that the trial court "failed to conduct a probing inquiry regarding his right to waive counsel[.]" Appellant's Brief, at 31. Citing the status conference hearing before Judge Mallios, Zalenski maintains that he unambiguously asserted a "right to represent himself[.]" *Id.* at 34 (quoting N.T. Status Hearing, 9/26/23, at 9). He then cites the trial transcript, stating that he "expressly stated his wish to reject the services of the public defender and represent himself" before Judge Ford. *Id.* (citing N.T. Trial, 10/5/23, at 7-8). Zalenski claims that Judge Ford then "manipulated . . . [him] into accepting [Attorney McGarry] as counsel" instead of honoring his request to proceed *pro se*. *Id.* He maintains that he "was granted the right to represent himself by a prior [j]udge of equal jurisdiction to the trial court[.]" *Id.* at 30-31. According to Zaleneski, Judge Ford should have "conduct[ed] a probing inquiry regarding his waiver of his right to counsel" before proceeding. *Id.* at 31.

To resolve this claim, we must address the effect of Judge Mallios' order. It is clear that once "a defendant has made a competent waiver of counsel, that waiver remains in effect through all subsequent proceedings in that case

- 7 -

absent a change of circumstances." ***Commonwealth v. Johnson***, 158 A.3d 117, 122 (Pa. Super. 2017). A trial court, therefore, could not interfere with the right of self-representation by asking the defendant to reconsider that decision.

We conclude that Zalenski did not validly waive his right to counsel before Judge Mallios. As a result, Judge Ford was not only permitted but required to reappoint counsel for Zalenski. In fact, Zalenski implicitly concedes that Judge Mallios did not obtain a valid waiver of his right to counsel before ordering him to act *pro se*. ***See*** Appellant's Brief, at 6-7 (explaining that Judge Mallios "did not ask any questions regarding the waiver of his right to counsel"). In addition to the lack of a colloquy, we note that Zalenski declined to directly answer Judge Mallios' question of whether he wished to represent him at trial. Instead, he asked to be released from incarceration so he could try to hire private counsel. When the court again asked if Zalenski intended to represent himself, Zalenski simply replied that he had nothing to hide. We conclude that this was not a sufficient colloquy and Judge Mallios erred by ordering Zalenski to represent himself.

This error presented Judge Ford with the untenable prospect of allowing Zalenski to proceed *pro se* in the face of a defective waiver and, therefore, violating his right to counsel.[7] Accordingly, the trial court did not violate

_____

[7] Zalenski does not address the effect of Judge Mallios' order in terms of the "law of the case" doctrine, which "refers to a family of rules [that] embody the
*(Footnote Continued Next Page)*

- 8 -

Zalenski's rights by broaching the subject. Moreover, the court did not need to conduct a waiver of counsel colloquy unless Zalenski unequivocally requested to waive counsel. *See Commonwealth v. Davido*, 868 A.2d 431, 438 (Pa. 2005) (stating "the request to proceed *pro se* [must] be unequivocal"). A court must examine "the totality of the circumstances surrounding the request" to determine if the request was unequivocal. *Id*. at 439.

Here, the circumstances do not demonstrate an unequivocal request to waive counsel. Zalenski claims that he "expressly stated his wish to reject the services of the public defender and to represent himself, a request that was originally accepted by the trial court, but undone when the trial court manipulated . . . Zalenski into accepting . . . counsel[.]" Appellant's Brief, at 34 (citation to transcript omitted). We agree that Zalenski unequivocally requested to represent himself; however, we also agree with the trial court that he "vacillated in his initial request even before the trial court explained the potential drawbacks of proceeding *pro se*." Trial Court Opinion, 6/24/24, at 7. Zalenski clarified that he subjectively believed that he "never waived

_____

concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). Assuming that this doctrine constrained Judge Ford, we note that "exceptional circumstances" permit revisiting the earlier ruling, such as "where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332. Allowing Zalenski to represent himself in violation of his right to counsel would be manifestly unjust.

[his] right to . . . private counsel." N.T. Nonjury Trial, 10/5/23, at 8. But the "right to appointed counsel does not include the right to counsel of the defendant's choice." **Commonwealth v. Albrecht**, 720 A.2d 693, 709 (Pa. 1998). The trial court therefore correctly explained to Zalenski that his options were to accept Attorney McGarry or represent himself. This correct statement did not "manipulate" Zalenski, and the trial court informed him that he retained the option to waive counsel. He declined to do so. The trial court was therefore not required to conduct a colloquy, **Davido**, **supra**, and the court did not force counsel upon Zalenski.

Zalenski's second subclaim pertains to the "hybrid representation" theory, alleging that during trial "it was unclear who was actually counsel, as . . . Zalenski continued to advocate for himself." Appellant's Brief, at 35. We do not agree that there was any confusion. As reflected in Zalenski's brief, his "advocacy" at trial was nothing more than disagreements with Attorney McGarry's tactical decisions:

> Here, [] Zalenski repeatedly referenced affidavits he wanted presented. The Defender['s] Association never sought to admit the affidavits or call any witnesses related to those affidavits. [] Zalenski lodged objections to the text messages, that the Defender['s] Association pushed aside, as did the trial court, telling him it was not his turn. [] Zalenski argued with his counsel and the trial court about evidence he believed was relevant. Clearly, [] Zalenski did not get a defense strategy that he thought was in his best interest to secure an acquittal. Because of this clear conflict in light of the fact that [] Zalenski repeatedly asserted he did not trust the Defender['s] Association and wanted to represent himself, [] Zalenski was in effect deprived of his state

- 10 -

and federal constitutional guarantee of the right to counsel, and therefore a new trial should be granted.

*Id.* at 36-37.

That Zalenski interjected, attempted to object, and generically discussed various matters with the court merely reflects the trial court's admirable patience and attempt to ensure that Zalenski had an opportunity to air his concerns. His disagreement with counsel's strategic choices does not serve as a basis for relief. *Cf. Commonwealth v. Fortune*, 302 A.3d 780, 789 (Pa. Super. 2023) (holding that "disagreement with [the] public defender as to trial strategy was not a conflict of interest" warranting withdrawal and an appointment of new counsel).

Zalenski's second and final claim argues that he was not formally arraigned on the contempt charge. Arraignment is governed by Pa.R.Crim.P. 571, which states that the court must advise the defendant of his right to be represented by counsel, the nature of the charges, and the right to file motions. *See* Pa.R.Crim.P. 571.[8] Zalenski argues that the trial court failed to formally read the charges or ask for a plea. He also claims he was prejudiced by this purported failure.

We need not address whether Zalenski established prejudice, as the underlying claim is meritless. "Arraignment may take place any time between the filing of the information and commencement of trial. It is commonplace

---

[8] We note that the docket contains an entry on December 22, 2022 described as "Preliminary Arraignment Scheduled." It is not clear what, if anything, occurred at this proceeding. We accept for purposes of disposition that Zalenski was not formally arraigned on this date.

- 11 -

for the court to conduct an arraignment immediately before trial to state the charges and inquire how the defendant wishes to plead." ***Commonwealth v. Leland***, 204 A.3d 461, 466 (Pa. Super. 2019). The ***Leland*** Court surveyed the decisions and concluded that "when a defendant does not formally plead guilty to a charge but still actively defends against the charge, his actions are tantamount to a not-guilty plea." ***Id.*** at 468.

Here, the trial court explained the nature of the charges when it informed Zalenski that he was charged with contempt for violating the PFA and the grading of the charge. ***See*** N.T. Nonjury Trial, 10/5/23, at 6. While the trial court did not request a formal plea, we agree with the trial court that Zalenski effectively entered a not guilty plea. ***See*** Trial Court Opinion, 6/24/24, at 14. Zalenski informed Judge Mellios that he was innocent and intended to contest the charges, and, at trial, he again maintained his innocence and denied contacting his ex-spouse.

Indeed, Zalenski does not contest that the trial court fulfilled its obligations. He instead argues that he labored under the misapprehension that he was "participating in a 'commercial procedure'," believed that the "[Uniform Commercial Code] controls the proceedings" and that he "was never told that he was a defendant." Appellant's Brief, at 38. These arguments are associated with the "sovereign citizen" movement. ***See Maida v. United States***, 2025 WL 48934, at *2 (D. Nev. Jan. 7, 2025) (unpublished) (Couvillier III, J.) ("While the intended meaning is unclear, the [c]ourt notes that including 'UCC 1-308' and similar disclaimers is a frequent and common tactic

- 12 -

by those who adhere to the sovereign citizen movement."); ***Commonwealth v. McGarry***, 172 A.3d 60, 66 (Pa. Super. 2017) ("Courts in this Commonwealth and various Federal Courts of Appeals have rejected sovereign citizen claims, identical to those raised here in a handful of unpublished decisions, as frivolous.") (citing cases). In any event, this argument establishes that Zalenski was fully aware of the charges against him but rejects the Commonwealth and trial court's authority to adjudicate his guilt. Because Zalenski was aware of the nature of the charges and effectively entered a not guilty plea, he was arraigned and is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2025